# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

## DOCKET NO. 22-13300

ALAN RODEMAKER,

Appellant,

-vs-

CITY OF VALDOSTA BOARD OF EDUCATION, et al.

Appellees.

## BRIEF OF APPELLANT

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA, VALDOSTA DIVISION
DISTRICT COURT NO. 7:21-CV-00076-HL

Brent J. Savage
Georgia Bar No. 627450
Kathryn Hughes Pinckey
Georgia Bar No. 376110
SAVAGE & TURNER, P.C.
102 E. Liberty Street, 8th Floor
Post Office Box 10600
Savannah, Georgia  31412
(912) 231-1140

## ATTORNEYS FOR APPELLANT

*Appeal No.22-13300*
*Rodemaker v. City of Valdosta BOE, et al.*

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ALAN RODEMAKER,

  Plaintiff/Appellant,

-vs-

CITY OF VALDOSTA BOARD OF
EDUCATION, or, in the Alternative,
VALDOSTA CITY SCHOOL
DISTRICT, et al.,

  Defendant/Appellee.

APPEAL NO. 22-13300

## <u>PLAINTIFF'S CERTIFICATE OF INTERESTED PERSONS AND</u>
## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, the undersigned

counsel of record for Appellant hereby certifies that the following is a full and

complete list of all trial judges, attorneys, persons, associations of persons, firms,

partnerships, or corporations that have an interest in the outcomes of this case

including subsidiaries, conglomerates, affiliates, parent corporations, publicly held

corporations that own 10% or more of a party's stock, and other identifiable legal

entities related to a party:

  - Bell, Debra;

*Page C-1 of 4*

*Appeal No.22-13300*
*Rodemaker v. City of Valdosta BOE, et al.*

- Brown, Kelisa;

- City of Valdosta Board of Education

- Valdosta City School District, Defendant/Appellee;

- Dennis, Sam D., attorney representing Plaintiff/Appellant;

- Fulp & Holt, PC, a law firm representing Plaintiff/Appellant;

- Holt, John D., attorney representing Plaintiff/Appellant;

- Howard, Tyra,

- Jones & Cork, law firm representing Defendants/Appellees;

- Joyce, Thomas W., attorney representing Defendants/Appellees;

- Lawson, the Hon. Hugh, U.S. District Court Judge;

- Lee, Warren;

- McDavid, William B.; attorney representing Defendants/Appellees;

- Oren, Brandon A., attorney representing Defendants/Appellees;

- Pinckney, Kathryn Hughes, attorney for Plaintiff/Appellant;

- Sam D. Dennis, PC, law firm representing Plaintiff/Appellant;

- Savage, Brent J., attorney for Plaintiff/Appellant;

- Shumphard, Liz;

*Appeal No.22-13300*
*Rodemaker v. City of Valdosta BOE, et al.*

- Rodemaker, Alan, Plaintiff/Appellant;

- Savage & Turner, P.C., law firm representing Plaintiff/Appellant;

- Turner, Robert Bartley, member of law firm representing

Plaintiff/Appellant.

- W. Kerry Howell, LLC, law firm representing

Defendants/Appellees;

## <u>CORPORATE DISCLOSURE STATEMENT</u>

As a natural person, Appellant, Alan Rodemaker, has no parent corporation,

nor is there any publicly held corporation that owns 10% or more of Appellant's

stock.

This  23<u>rd</u>  day of  <u>January</u> , 2023.

/s/ ***Brent J. Savage***
Brent J. Savage
Georgia Bar No.  627450
E-mail: <u>bsavage@savagelawfirm.net</u>

/s/ ***Kathryn Hughes Pinckney***
Kathryn Hughes Pinckney
Georgia Bar No.  376110
E-mail: <u>kpinckney@savagelawfirm.net</u>

*Appeal No.22-13300*
*Rodemaker v. City of Valdosta BOE, et al.*

SAVAGE & TURNER, P. C.
Post Office Box 10600
Savannah, GA 31412
(912) 231-1140
(912) 232-4212 - fax

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

The Appellant requests that this Court conduct oral argument.  The issues in this case involve proper application of the affirmative defense of res judicata, in the context of claims brought against a public School District under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

Appellant Alan Rodemaker, who is white, was terminated from his position as the Head Football Coach for Valdosta High School.  He claims that his termination was race-based, and procured by five black members of the City of Valdosta Board of Education.  Coach Rodemaker filed a prior action against the five individual Board Members, alleging violation of 42 U.S.C. §§1981 and 1983. The prior action was dismissed by this Court.  <u>Rodemaker v. Shumphard</u>, 859 F. App'x 450, 454 (11th Cir. 2021).

As discussed below, the "prior action," or the action which Appellee claims bars prosecution of this case, was a civil rights action brought against individual board members in their individual capacities.  It was not brought against Coach Rodemaker's employer, the City of Valdosta School District.

For the defense of res judicata to apply, each of the following four requirements must be met:  1) a final judgment on the merits; 2) rendered by a court of competent jurisdiction; 3) identity of parties; and 4) the same cause of

action is involved in both cases.  Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1238 (11th Cir. 1999) (citing Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498 (11th Cir. 1990)); see also Kaiser Aerospace & Elecs. Corp. v. Teledyne Indus., Inc. (In re Piper Aircraft Corp.), 244 F.3d 1289, 1296 (11th Cir. 2001).

Appellant does not dispute that the judgment in the Section 1983 Action was a final judgment issued by a court of competent jurisdiction.  He argues instead that the critical element of privity is lacking, because the Individual Board Members were sued in their individual capacities, and not in their official capacities.  See Konikov v. Orange Cty., 276 F. App'x 916, 918-19 (11th Cir. 2008).

The issues raised in this Appeal focus on three main issues:  first, whether the Individual Board Members, in their individual capacities, are in "privity" with the School District such that resolution of a prior "individual capacity" claim in their favor bars this Title VII action against his employer, the School District; second, whether the causes of action are the "same;" and third, whether allowing this Title VII Action to proceed, against a defendant who admittedly was not a party to the first action, would amount to improper "claim splitting."

Evaluation of this appeal requires analysis of the relationship between elected government officials and the government entities, and the nature of

"individual capacity" claims.  It further requires analysis of the difference in proof of the causal connection between a racially discriminatory action, and the resulting harm.  In at Section 1981/1983 case alleging adverse employment action based on race, race must be the "but for" cause of the termination.  In comparison, in a Title VII action, the race must be only a motivating factor.  See Rodemaker v. Shumphard, 859 F. App'x 450, 454 (11th Cir. 2021).

Finally, the opinion of this Circuit in Jang v. United Techs. Corp., 206 F.3d 1147 (11th Cir. 2000), must be distinguished from the case at bar.  It should not be utilized to preclude Coach Rodemaker from pursuing his claims against a government entity not named as a party in the original action, which is alleged to bar the instant action.

Through oral argument, the parties can explore these differing and sometimes conflicting principles.

*-iii-*

## <u>TABLE OF CONTENTS</u>

PLAINTIFF'S CERTIFICATE OF INTERESTED PERSONS AND

    CORPORATE DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . C-1

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

STATEMENT OF SUBJECT-MATTER AND

    APPELLATE JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xii

    A.    Basis for District Court's Subject Matter Jurisdiction. . . . . . . . . . . xii

    B.    Basis for Court of Appeals' Jurisdiction . . . . . . . . . . . . . . . . . . . . . xii

    C.    Filing Dates Establishing Timeliness of Appeal.. . . . . . . . . . . . . . . xii

    D.    Appeal is From a Final Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . xiii

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    Course of Proceedings and Disposition in the Court Below. . . . . . . 4

    B.    Statement of the Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        1.    Allegations in the Title VII Complaint . . . . . . . . . . . . . . . . . . 7

        2.    The EEOC Charge of Discrimination.. . . . . . . . . . . . . . . . . . 13

        3.    The Section 1983 Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

C.      Time Line. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

D.      Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

ARGUMENT AND CITATIONS TO AUTHORITY . . . . . . . . . . . . . . . . . . . . . 22

A.      There is No Privity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    1.      Illustrative case - <u>Andrews v. Daw</u>. . . . . . . . . . . . . . . . . . . . . 28

    2.      Illustrative Case - <u>Johnson v. Alabama Department of</u>

            <u>Human Resources</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

    3.      Illustrative Case - <u>Headly v. Bacon</u>. . . . . . . . . . . . . . . . . . . . 34

B.      The District Court Improperly Considered the "Counsel

        Issue" in Determining that Privity Existed between the

        Individual Board Members and the School District. . . . . . . . . . . . . 37

C.      The Same Cause of Action is not Involved in Both Suits. . . . . . . . . 40

    1.      The Legal Cause of Action is Not Involved in Both

            Actions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

    2.      There has been no Improper "Claim Splitting." . . . . . . . . . . . 43

        a)  <u>Heyliger v. State Univ. & Cmty. Coll. Sys.</u>, 126 F.3d 849,

            851 (6th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

   b) <u>Brzostowski v. Laidlaw Waste Sys.</u>, 49 F.3d 337, 339

     (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

   c) <u>Woods v. Dunlop Tire Corp.</u>, 972 F.2d 36

     (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

   d) <u>Rivers v. Barberton Bd. of Educ.</u>, 143 F.3d 1029, 1031

     (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

 D. The District Court also Erred in Granting the School District's

   Motion for Summary Judgment on the Issue of Attorneys Fees

   and Punitive Damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF CITATIONS

*Cases:*

Andrews v. Daw, 201 F.3d 521 (4th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . 24, 28, 30

Astron Indus. Assocs., Inc. v. Chrysler Motors Corp., 405 F.2d 958

      (5th Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Bd. of County Comm'rs v. Brown, 520 U.S. 397 (1997) . . . . . . . . . . . . . . . . . . . 26

Beard v. O'Neal, 728 F.2d 894 (7th Cir. 1984) *cert. denied*,

      469 U.S. 825 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Blount v. Comm'r Culliver, No. 2:18-CV-970-WHA-CSC,

      2021 U.S. Dist. LEXIS 231024 (M.D. Ala. Dec. 2, 2021) . . . . . . . . . . . . 30

Brewer v. Dupree, No. 00-T-543-N, 2003 U.S. Dist. LEXIS 25327

      (M.D. Ala. Feb. 12, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Brzostowski v. Laidlaw Waste Sys., 49 F.3d 337 (7th Cir. 1995) . . . . . . . . . . . . 47

Busby v. City of Orlando, 931 F.2d 764 (11th Cir. 1991) . . . . . . . 20, 41, 42, 50, 51

Carson v. Brown, 348 Ga. App. 689 (2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498

      (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii, 19, 22, 26

City of Canton v. Harris, 489 U.S. 378 (1989) . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct.

    1009 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Dearth v. Collins, 441 F.3d 931 (11th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . 41

E.E.O.C. v. Pemco Aeroplex, Inc., 383 F.3d 1280 (11th Cir. 2004) . . . . . . . . . . 18

Echeverria v. Bank of Am. N.A., 632 F. App'x 1006 (11th Cir. 2015) . . . . . . . . 25

Gogel v. Kia Motors Mfg. of Georgia, Inc., 967 F.3d 1121

    (11th Cir. 2020) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Gold v. City of Miami, 151 F.3d 1346 (11th Cir. 1998) . . . . . . . . . . . . . . . . . . . 26

Goldstein v. Galvin, 719 F.3d 16 (1st Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . 30

Gonzales v. Hernandez, 175 F.3d 1202 (10th Cir. 1999). . . . . . . . . . . . . . . . . . . 32

Grech v. Clayton Cty., 335 F.3d 1326 (11th Cir. 2003). . . . . . . . . . . . . . . . . . . . 26

Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009) . . . . . . . . . . . . . . . . . . . . . . 15

Hafer v. Melo, 502 U.S. 521 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Headley v. Bacon, 828 F.2d 1272 (8th Cir. 1987) . . . . . . . . . . . . . . . . . . . 31, 34-36

Herring v. Secretary, Dep't of Corrections, 397 F.3d 1338 (11th Cir. 2005). . . . . 38

Heyliger v. State Univ. & Cmty. Coll. Sys., 126 F.3d 849

    (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46, 47, 50

Hinson v. Clinch Cty. Bd. of Educ., 231 F.3d 821 (11th Cir. 2000) . . . . . . . . 50-51

Hurt v. Pullman, Inc., 764 F.2d 1443 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . 24

James v. Heritage Valley Fed. Credit Union, 197 F. App'x 102

    (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Jang v. United Techs. Corp., 206 F.3d 1147 (11th Cir. 2000) . . . .  iii, 44, 45, 46, 50

Johnson v. Ala. Dep't of Human Res., 546 F. App'x 863

    (11th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32-34

Johnson v. Barbour Cty. Bd. of Educ., No. 2:22-cv-84-ECM, 2022 U.S. Dist.

    LEXIS 109322 (M.D. Ala. June 21, 2022) . . . . . . . . . . . . . . . . . . . . . . . . 34

Kaiser Aerospace & Elecs. Corp. v. Teledyne Indus., Inc.

    (In re Piper Aircraft Corp.), 244 F.3d 1289 (11th Cir. 2001) . . . . . . ii, 19, 22

Kentucky v. Graham, 473 U.S. 159 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Konikov v. Orange Cty., 276 F. App'x 916 (11th Cir. 2008) . . . . . . . . . . . ii, 20, 24

Lober v. Moore, 417 F.2d 714 (D.C. Cir. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . 26

Lozman v. City of Riviera Beach, 713 F.3d 1066 (11th Cir. 2013) . . . . . . 24, 33, 34

Marsh v. Butler County, 268 F.3d 1014 (11th Cir. 2001) (*en banc*) . . . . . . . . . . . 26

McLellan v. Perry, 672 F. App'x 690 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . 32

Mesa Petroleum Co. v. Coniglio, 787 F.2d 1484 (11th Cir. 1986) . . . . . . . . . . . 18

Mitchell v. Chapman, 343 F.3d 811 (6th Cir. 2003)

    (abrogated in part on other grounds by

    14 Penn Plaza LLC v. Pyett, 556 U.S. 247 (2009) . . . . . . . . . . . . . . . . . . . 30

Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978) . . . 25, 26

Nicarry v. Cannaday, No. 6:03-cv-87-Orl-28DAB,

2006 U.S. Dist. LEXIS 95074 (M.D. Fla. Dec. 7, 2006). . . . . . . . . . . . . . 30

Park City Water Auth., Inc. v. N. Fork Apartments, L.P., No. 09-0240-WS-M,

2009 U.S. Dist. LEXIS 116190 (S.D. Ala. Dec. 14, 2009) . . . . . . . . . . . . 38

Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235 (11th Cir. 1999) . . . . . . . . ii, 19, 22

Rivers v. Barberton Bd. of Educ., 143 F.3d 1029 (6th Cir. 1998) . . . . . . . . . . . . 49

Rodemaker v. Shumphard, 859 F. App'x 450 (11th Cir. 2021) . . . . . . . . . i, 15, 20

Roy v. City of Augusta, Maine, 712 F.2d 1517 (1st Cir. 1983). . . . . . . . . . . . . . 31

Sheba Ethiopian Rest., Inc. v. Dekalb Cty., 820 F. App'x 889

(11th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Shurick v. Boing Co., 622 F.3d 1114 (11th Cir. 2001) . . . . . . . . . . . . . . . 21, 42, 43

Sullivan v. Williams, No. 2:05-CV-1033-MEF,

2008 U.S. Dist. LEXIS 114827 (M.D. Ala. June 17, 2008) . . . . . . . . . . . 30

Taylor v. Sturgell, 553 U.S. 880 (2008). . . . . . . . . . . . . . . . . . . . . . . . . 37, 39, 40

Unimex, Inc. v. HUD, 594 F.2d 1060 (5th Cir. 1979) (per curiam) . . . . . . . . . . 31

Usher v. Johnson, 157 Ga. App. 420 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Vanover v. NCO Fin. Serv., Inc., 857 F.3d 833 (11th Cir. 2017) . . . . . . . . . . . . 45

Watkins v. Elmore, 745 F. App'x 100 (11th Cir. 2018). . . . . . . . . . . . . . . . . . . 45

Woods v. Dunlop Tire Corp., 972 F.2d 36 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . 48

Yeldell v. Cooper Green Hosp., 956 F.2d 1056 (11th Cir. 1992) . . . . . . . . . . . . . 28

*Statues:*

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xiii

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xiii

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xiii

42 U.S.C. § 1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i, 1

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i, 1, 3

42. U.S.C. § 2000e et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i, xiii, 1, 2, 4,14, 41

42 U.S.C.S. § 2000e-5(f)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Court Rules:*

Fed. R. App. P. 4(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xiv

Fed. R. Civ. P. 56(a)-(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fed. R. Civ. P. 59(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xiii

## STATEMENT OF SUBJECT-MATTER
## AND APPELLATE JURISDICTION

**A.     Basis for District Court's Subject Matter Jurisdiction.**

Appellant Alan Rodemaker brings this instant action for violations of Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (hereinafter "Title

VII.").  Thus, the District Court had subject matter jurisdiction under 28 U.S.C. §

1331, due to the presence of a federal question.

**B.     Basis for the Court of Appeal's Jurisdiction.**

Appellate jurisdiction is proper under 28 U.S.C. § 1291, and the appeal is

from a final order.

**C.     Filing Dates Establishing Timeliness of Appeal.**

Mr. Rodemaker appeals from the order of the District Court, granting the

Motion to Dismiss of the Individual Defendants, and the Motion for Summary

Judgment filed by the School District.  (Doc. 51).  The District Court entered

judgment on August 31, 2022 (Doc. 52).  Mr. Rodemaker filed a motion for

reconsideration, pursuant to Fed. R. Civ. P. 59(e), on September 28, 2022.   (Doc.

53).  The District Court denied this motion on October 17, 2022.  (Doc. 58).

Mr. Rodemaker filed a Notice of Appeal within thirty days of the entry of judgment, on September 30, 2022, as required by Fed. R. App. P. 4(a). (Doc. 54). Even though Mr. Rodemaker filed his Notice of Appeal prior to disposition of the Motion for Reconsideration, said notice "became effective" to appeal the order of dismissal and the order granting summary judgment when the order disposing of the motion for reconsideration was entered, i.e., October 17, 2022. (Doc. 58).

**D.    Appeal is From a Final Order.**

As discussed above, the appeal is from the final order. The judgment of the District Court disposes of all of the Appellant Rodemaker's claims.

## <u>STATEMENT OF THE ISSUES PRESENTED FOR REVIEW</u>

For purposes of analyzing the affirmative defense of res judicata, whether elected government officials, when sued in their individual capacities, are in privity with the government entity, such that a judgment in favor of the government official in claims brought against them in their individual capacities bars a subsequent action against the government entity itself?

For the purposes of analyzing the affirmative defense of res judicata, does the fact that a government entity, not a party to a prior action, provides counsel to government officials sued in their individual capacities in the prior action, "bind" the government entity to the prior adjudication, such that it can claim the second action is barred by the result in the first action?

For purposes of analyzing the affirmative defense of res judicata, whether a claim for violation of "Title VII" against an individual's employer is "the same cause of action" as a claim for violation of the employee's constitutional rights brought against government officials in their individual capacities pursuant to 42 U.S.C. §§ 1981/1983, such that judgment in favor of the government officials in their individual capacities bars a subsequent Title VII action against the government entity itself?

## STATEMENT OF THE CASE

Appellant Coach Alan Rodemaker began coaching at Valdosta High School in 2010. He was promoted to the position of Head Football Coach in 2016. In that year -- his first year as Head Football Coach -- Valdosta High School won the State 6A Championship for the first time in eighteen years. (Complaint, Doc. 1, para. 17 to 20). As both a high school football coach and a teacher, Coach Rodemaker's reviews and reputation were exemplary. (Id. para. 20).

Despite his record of success with Valdosta High School, a majority of the members of the City of Valdosta Board of Education voted to terminate Coach Rodemaker's contract as football coach in January of 2020. This termination was suspect: the school Superintendent actually recommended that Coach Rodemaker's coaching contract be renewed. (Complaint, Doc. 1, para. 24). Nevertheless, the Board of Education voted, along racial lines, in favor of termination. At this time, the make-up of the Valdosta Board of Education had recently changed from a majority-white to a majority-African-American board: now, instead of five white members and four African-American members, the Board became five African-Americans and four whites. (Id. at para. 25).

In the wake of his termination, Coach Rodemaker brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-

- 2 -

17.  He alleges that his termination was unlawfully based on his race, and brings this Title VII claim against his former employer, the City of Valdosta Board of Education and the City of Valdosta School District.  (For the purposes of this motion, these Defendants will be collectively referred to as the "School District.")

Before filing this action, Coach Rodemaker had initiated a 42 U.S.C. § 1983 action against the five black members of the school board, suing each in their individual capacities, a case filed in the United States District Court for the Middle District of Georgia, Valdosta Division.  Although the Coach Rodemaker's Section 1983 claims survived defendants' motions to dismiss, this Circuit reversed the District Court, concluding that "Rodemaker failed to allege sufficient facts to state a racial discrimination claim under §§ 1981 and 1983, including that, but-for his race, the defendants would have renewed his contract."  Rodemaker v. Shumphard, 859 F. App'x 450, 454 (11th Cir. 2021).

Appellee School District argues that the doctrine of *res judicata* prevents Coach Rodemaker from pursuing his remedies under Title VII.  As discussed below, *res judicata* does not bar this claim.  First, because the Section 1983 Action was brought against the five black Board Members in their individual capacities, the defendants in the prior action are not in identity with the defendant in this action.  Second, the School District itself was not a party to the Section 1983

- 3 -

action, and Coach Rodemaker could not have filed a Title VII claim in the first case because such a claim lies only against the employer.

**A.      Course of Proceedings and Disposition in the Court Below.**

Coach Rodemaker filed this civil action against the City of Valdosta School Distrct and five of its individual members, Warren Lee, Liz Shumphard, Tyra Howard, Debra Bell, and Kelisa Brown (hereinafter "Individual Members") in the United States District Court for the Middle District of Georgia, Valdosta Division. (Doc. 1).  As to the School District, Coach Rodemaker alleged that defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (hereinafter "Title VII"), thereby causing him to sustain damages.  (Count One, Title VII Claim as to School District; Count Two, Title VII Claim as to Individual Defendants).  Coach Rodemaker claimed that the Individual Board Members unlawfully conspired to discriminate against him on the basis of his race.  (Count Three, Doc. 1, at 17-18).

The School District filed an answer, denying all material allegations, but raised no affirmative defenses.  (Doc. 15).

*Motions to Dismiss of the Individual Board Members.*  Individual School Board member Brown filed a Motion to Dismiss, (Doc. 7), as did Board Members Lee (Doc. 9), Bell (Doc. 11), Howard (Doc. 12), and Shumphard. (Doc. 13).

Coach Rodemaker filed a composite response to the Lee and Brown motions to dismiss, (Doc. 21), and a composite response to the Bell, Howard, and Shumphard motions to dismiss.  (Doc. 22).  Each Board Individual Member filed a reply brief.  (Lee (Doc. 26); Brown, (Doc. 27); Bell (Doc. 28), Howard (Doc. 29), and Shumphard (Doc. 30)).

*School District Motion for Summary Judgment.*  The School District filed a Motion for Summary Judgment (Doc. 31), to which Coach Rodemaker responded (Doc. 33).

The District Court conducted a hearing on the pending motions on May 19, 2022.  (Doc. 45, Minute Entry).  After accepting supplemental briefs from Appellant Rodemaker and Appellee BOE (Rodemaker, Doc. 49; BOE, Doc. 50), the District Court granted the Individual Defendant's Motion to Dismiss, and the BOE's motion for Summary Judgment.  (Doc. 51).

*Ruling of the District Court.*  The District Court dismissed the claims against the Individual Board Members, concluding these claims were pre-empted by Title

VII (Doc. 51, p. 9), and further that such claims were barred by the "intracorporate conpsiracy doctrine." (Id. at pp. 10-13). Appellant does not challenge that ruling.

As to the Title VII claims against the School District itself, the District Court concluded that these claims were barred by the doctrine of "res judicata." (Id. at 15 to 25).

As noted above, Appellant Rodemaker filed a Motion for Reconsideration (Doc. 53), which the District Court denied. (Doc. 58).

**B.    Statement of the Facts**.

The primary issue on appeal is whether this Title VII action is barred by the doctrine of *res judicata*. Evaluation of this issue requires discussion of the factual allegations in this case, and of claims raised in the Section 1983 case.[1]

---

[1] Even though the Court is asked to review the District Court's decision granting summary judgment to the School District, that motion concerned the preclusive effect of a prior decision issued by this Circuit in evaluating Coach Rodemaker's claims against the Individual Board Members. Thus, the factual allegations of the Complaint were not challenged by the School District in its summary judgment motion. However, to the extent that the factual allegations in Coach Rodemaker's Title VII Complaint are relevant to or assist this Court in evaluation of the issue on appeal, Appellant will outline these allegations.

### 1.    The Allegations in the Title VII Complaint.

The Complaint alleges as follows:  Coach Rodemaker was a successful football coach with Valdosta High School.  (Complaint, Doc. 1, para. 22).  In 2016, he was promoted to the head football coaching position at Valdosta High. (Id. at para. 17).  That year, Valdosta High won the State 6A Championship for the first time in 18 years.  (Id.)  As both a high school football coach and teacher, Plaintiff's reviews and reputation were exemplary. (Id., para. 20).

Before his non-renewal, he had accepted a school contract with the City of Valdosta Board of Education ("School Board") on an annual basis for each of the previous ten years. (Id. at para. 22).  In January 2020, Plaintiff's contract as a teacher and football coach was up for renewal again, **as recommended by the Superintendent**.  (Id. at para. 24).  At this time, the make-up of the Valdosta Board of Education had recently changed from a majority-white to a majority-African-American board:  now, instead of five white members and four African-American members, the Board became five African-Americans and four whites. (Id. at para. 25).

This change in School Board composition precipitated the non-renewal of Coach Rodemaker's football coaching tenure.  At the January 28, 2020 Board meeting, School District Superintendent Dr. Todd Cason presented his

- 7 -

recommendation that Coach Rodemaker's position as Valdosta High School Head Football Coach be renewed for the 2020-2021 School Year.  (Complaint, para. 29). Prior to this meeting, the policy and custom of the School Board was to vote on all of the Superintendent's recommendations for rehire in one vote, instead of considering each individual recommended employee separately.  However, in breaking with this custom, Board Member Lee requested that the recommendation to renew Coach Rodemaker's football coaching contract be considered separately from consideration of other employees.  (Complaint, paras. 30 to 31).

Warren Lee, who did not have a valid justification for nonrenewal, felt the need to separate consideration of Dr. Cason's recommendation to renew Coach Rodemaker's contract from consideration of Dr. Cason's recommendation regarding other employees.  Thus, the Personnel List was divided into two lists: an "A" list and a "B" List.  As requested by Board Member Lee, Coach Rodemaker was the only employee identified on the "B" list.  (Complaint, para. 32-33).

Consideration of the Personnel Recommendations made by Dr. Cason were discussed in executive session, outside the hearing of the public, and, at the conclusion of the executive session, the School Board returned to public session. (Complaint, para. 34).

On motion made by Board Member Stacy Bush, the Board was asked to approve Dr. Cason's recommendation that Coach Rodemaker's contract as the Head Football Coach be renewed. This motion was defeated by a vote of 4-5. Those opposed to the motion to renew Coach Rodemaker were the five African American members of the School Board: Individual Board Members Lee, Shumphard, Howard, Brown, and Bell. (Complaint, para. 35). None of the Individual Board Members who voted against Coach Rodemaker's renewal, provided a reason for that vote when the public portion of the January 28, 2020 School Board meeting reconvened after conclusion of the executive session. (Complaint, para. 36).

The local community was shocked when news of the decision became public. In response to this outcry and concern, action on Dr. Cason's recommendation to renew Coach Rodemaker's football coaching contract was placed on the agenda for the February 11, 2020 School Board meeting. (Complaint, para. 37). During the public participation segment of this meeting, five individuals spoke against Coach Rodemaker. Each of these five individuals was African American. (Complaint, para 39).

Floyd Rose was one of the five African American individuals who spoke against renewing Coach Rodemaker's football coaching contract. Rose urged the

black members of the School Board to "stand together" to reaffirm their previous decision to terminate Coach Rodemaker. Rose also reminded the black members of the board that the were "put there" by black votes. (Complaint, para. 40).

African American Alma Williams spoke against the renewal of Coach Rodemaker's contract.  Her reasons were also racially motivated - she stated that the color of her skin prevented her from advancing her career.  She further implied that black football players had been used by the white establishment to better the football program, without regard to the well-being of the black players. (Complaint, para. 41).

Another African American, James Gatlin, was not originally on the list to speak during the public participation portion of the meeting.  However, in response to a text message Gatlin sent to Board Member Lee during the School Board meeting, Mr. Gatlin's name was added to the list, and he was allowed to speak against renewal of Coach Rodemaker's coaching contract.  (Complaint, para. 42).

In contrast to the uniquely black opposition to Coach Rodemaker's renewal, those speaking in support of his renewal were both African Americans and Caucasian.  (Complaint, para. 43).  One of these individuals, Sam Dennis, signed in to speak during the public comment portion of the School Board meeting. However, his name was inexplicably "crossed off" the list. Mr. Dennis' name was

only returned to the list of those allowed to speak after Board Member Lee made arrangements for Mr. Gatlin to speak. (Complaint, para. 44).

At the conclusion of the public comment, the School Board members retired to executive session to discuss personnel matters. Again, Dr. Cason's recommendation to renew Coach Rodemaker's contract as Head Football Coach was separated out as its own agenda item. Again, Board Member Stacy Bush moved the Board to approve Dr. Cason's recommendation to renew Coach Rodemaker. (Complaint, para. 45-47).

Again, this motion was defeated by a vote of 4-5. Those opposed to the motion to renew Coach Rodemaker were the five African American members of the School Board: Board Members Lee, Shumphard, Howard, Brown, and Bell. Again, none of the Individual Board Members provided a reason for their vote not to renew Coach Rodemaker's contract as Head Football Coach during the public portions of the February 11, 2020 School Board Meeting. (Complaint, para. 48-49).

Kelly Wilson, who was a member of the School Board in 2020, during the time that both votes to renew Coach Rodemaker came to the floor for consideration, confirmed that race was a factor in the non-renewal. (Complaint, para. 50).

- 11 -

A number of additional factors further demonstrate that the actions taken by the Board and its African American members were racially motivated and discriminatory. These factors include, but are not limited to, the following:

a. The African-American Board members participated in public meetings where they discussed their intent to vote against the renewal of Coach Rodemaker's contract as Head Football Coach.  Upon information and belief, these meetings involved discussions of replacing Coach Rodemaker with a black coach, and took place at an African-American church.  At these meetings, the Individual Board Members improperly discussed school business.

b. The African-American Board members communicated amongst themselves, via email and/or "text messaging" regarding their concerted plan to vote to non-renew Coach Rodemaker as the Head Football Coach.

c. Warren Lee has previously stated that Valdosta High School needed a head football coach of color, not a white head coach.

d. Warren Lee had insisted in the past than an "A" or "C" designation be placed on the job applications which were brought

- 12 -

before the Board, a code as to whether the applicant was African

American or Caucasian.

(Complaint, Doc. 1, para. 52).

The Complaint alleges facts which clearly support Coach Rodemaker's

position that his termination was motived by racial animus.

### 2.    The EEOC Charge of Discrimination.

Following the non-renewal of this contract as the Head Football Coach for

Valdosta High School, Coach Rodemaker made a charge of discrimination to the

Equal Employment Opportunity Commission on March 27, 2020.  (Doc. 1-1).

This original charge named the "Valdosta Board of Education" as the respondent.

Subsequently, on July 15, 2020, Coach Rodemaker made a second charge of

discrimination, this time identifying the "Valdosta City School District" as the

respondent.  (Doc. 1-2).

On March 21, 2021, the EEOC responded to both discrimination charges,

giving Coach Rodemaker a "right to sue" letter, which allowed him to file the

instant action.  (Copies of the "Right to Sue" are Doc. 1-3 and Doc. 1-4).  Coach

Rodemaker <u>could not have</u> brought any Title VII claim unless and until he received

this "right to sue" from the EEOC.[2]  Once he received the "right to sue" letter,

Coach Rodemaker initiated this Title VII Action on June 18, 2021.

### 3.    The Section 1983 Action.

On April 23, 2020, prior to filing this Title VII Action against the School

District, Coach Rodemaker had initiated a "Section 1983 Action," naming the five

African American members of the School Board **in their individual capacities**, as

defendants.  (Relevant portions of the papers in the Section 1983 Action were

placed before the District Court for use in its evaluation of the Title VII Claim; a

copy of this Section 1983 Complaint appears as Doc. 31-3).  The 1983 Action was

pled in two counts:  Racial Discrimination under 42 U.S.C. §§ 1981 and 1983

(Count One), and a claim for Attorneys Fees under 42 U.S.C. § 1988 (Count II).

The School District itself was **not** named as a defendant in the Section 1983 action,

and the Individual Board Members were named in their individual, not official,

capacities.

Each of the Individual Board Members filed a Motion to Dismiss the Section

1983 claims.  (Doc. 31-4 (Lee); Doc. 31-5 (Shumpard); Doc. 31-6 (Howard); Doc.

31-7 (Bell); and Doc. 31-8 (Brown)).  By order dated December 1, 2020, the

District Court denied these motions to dismiss.  (Doc. 31-9).  The Individual Board

---

[2]  42 U.S.C. § 2000e-5(f)(1).

Members appealed this decision to the Eleventh Circuit, filing a notice of appeal on December 15, 2020.  (Doc. 31-10).  By opinion dated June 8, 2021, the Eleventh Circuit reversed the District Court.  (Doc. 31-11).

In dismissing the claim, the Eleventh Circuit recognized that while Section 1981 racial discrimination claims and Title VII racial discrimination claims are similar, they are different on one key respect:

> One key difference, significant here, is that a § 1981 plaintiff "must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1019 (2020) (interpreting § 1981); compare, e.g., Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 174 (2009) (recognizing that a Title VII plaintiff need only show that a protected characteristic was a 'motivating factor' for an adverse employment action).

Rodemaker v. Shumphard, 859 F. App'x 450, 452 (11th Cir. 2021).  In its conclusion, the Panel summarized that "Rodemaker failed to allege sufficient facts to state a racial discrimination claim under §§ 1981 and 1983, including that, but-for his race, the defendants would have renewed his contract."  (Id. at 453).  This opinion does not preclude Coach Rodemaker from alleging, as he does in this Title VII case, that race was a "motivating factor" in the School District's decision to terminate him.

**C.    Time Line.**

For purposes of evaluating this motion, the following time line is of

assistance:

| | |
|---|---|
| January 28, 2020: | School Board's first vote on renewal of Coach Rodemaker's contract.  (Compliant, Doc. 1, para. 27). |
| February 11, 2020: | School Board's second vote on renewal of Coach Rodemaker's contract.  (Complaint, No. 1, para. 38). |
| March 27, 2020 | Rodemaker files original charge of Discrimination with the EEOC, naming "Valdosta Board of Education" as the respondent.  (Doc. 1-1). |
| April 23, 2020 | Coach Rodemaker initiated a Section 1983 Action, naming the five African American members of the Valdosta City School District, **in their individual capacities**, as Defendants.  (Doc. 31-3). |
| July 15, 2020 | Rodemaker files second charge of discrimination, this time identifying the "Valdosta City School District" as the respondent.  (Doc. 1-2). |
| December 1, 2020 | In the Section 1983 Action, the District Court denies  motions to dismiss of the Individual Board Members.  (Doc. 31-9). |
| December 15, 2020 | Individual Board Members file a Notice of Appeal in the Section 1983 Action.  (No. 31-10). |
| March 22, 2021 | EEOC issues Rodemaker "right to sue" letters, which allowed him to file the instant action. |

|  |  |
|---|---|
|  | (Copies of the "Right to Sue" Letters are Doc. 1-3 and Doc. 1-4). |
| June 8, 2021 | Eleventh Circuit reversed the District Court's denial of the Individual Board Members' Motion to Dismiss in the Section 1983 Action. (Doc. No. 31-11). |
| June 18, 2021. | Rodemaker files the instant Title VII action, against the Individual Board Members and the School District. (Doc. 1). |
| June 20, 2021 | 90 days after EEOC issues "Right to Sue" Letter. Deadline for filing Title VII Action. |

As clearly demonstrated above, Coach Rodemaker could not have filed the instant Title VII against the School District until March 22, 2021, at which point his Section 1983 Action was being considered by the Eleventh Circuit.

As will be discussed below, the Section 1983 Action filed against the Individual Board Members in their Individual Capacities does not have preclusive effect to the Title VII claims brought in this case against the School District.

**D.    Standard of Review.**

The Eleventh Circuit reviews a district court's grant of summary judgment de novo, "view[ing] the evidence in the light most favorable to the non-moving party.'" Gogel v. Kia Motors Mfg. of Georgia, Inc., 967 F.3d 1121, 1134 (11th Cir. 2020) (*en banc*) (quotations omitted). Under this standard, summary judgment is

- 17 -

proper if the materials in the record indicate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a)-(c).

The Eleventh Circuit employs the de novo standard in review of a "district court's determination of res judicata or collateral estoppel."  E.E.O.C. v. Pemco Aeroplex, Inc., 383 F.3d 1280, 1285 (11th Cir. 2004).  However, "whether a party is in privity with another for preclusion purposes is a question of fact that is reviewed for clear error.  Id. at 1285-1286 (referencing Mesa Petroleum Co. v. Coniglio, 787 F.2d 1484, 1489-90 (11th Cir. 1986) and Astron Indus. Assocs., Inc. v. Chrysler Motors Corp., 405 F.2d 958 (5th Cir. 1968)).

## SUMMARY OF THE ARGUMENT

The School District invokes the doctrine of res judicata to argue that resolution of the original Section 1983 Action against the Board Members in their individual capacities bars the instant Title VII Action against the School District. The School District makes this argument despite the fact that it was not party to the original action, and despite the fact that Coach Rodemaker could not have filed his Title VII discrimination claims against the School District unless and until he received a "Right to Sue" letter from the EEOC.

For the defense of res judicata to apply, each of the following four requirements must be met:  1) a final judgment on the merits; 2) rendered by a court of competent jurisdiction; 3) identity of parties; and 4) the same cause of action is involved in both cases.  Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1238 (11th Cir. 1999) (citing Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498 (11th Cir. 1990)); see also  Kaiser Aerospace & Elecs. Corp. v. Teledyne Indus., Inc. (In re Piper Aircraft Corp.), 244 F.3d 1289, 1296 (11th Cir. 2001).

Appellant does not dispute that the judgment in the Section 1983 Action was a final judgment issued by a court of competent jurisdiction.  He argues instead that the critical element of privity is lacking, because the Individual Board

- 19 -

Members were sued in their individual capacities, and not in their official

capacities.  Konikov v. Orange Cty., 276 F. App'x 916, 918-19 (11th Cir. 2008).

Appellant also argues that the same cause of action is not involved in both

cases.  The Section 1983 Action was just that - a claim that the Individual Board

Members violated 42 U.S.C. §§ 1981 and 1983 through their racially motivated

termination of his coaching contract.  (Complaint in Section 1983 Action, Doc. 31-

3, pp. 4-5).  In comparison, this case is a claim under Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e, et seq.  As highlighted by the Eleventh Circuit,

these two causes of action differ in identification of the causal relationship between

race and the act of discrimination.  In a Section 1983 case, this causal connection is

a "but for" relationship -- i.e., the plaintiff must prove that "but for [his] race, [he]

would not have suffered the loss of his legally protected right."  Rodemaker v.

Shumphard, 859 F. App'x 450, 452 (11th Cir. 2021) (internal citations omitted). In

contrast, in a Title VII claim, the plaintiff need only prove that race was a

"motivating factor" to the adverse employment action.  Id.

Finally, a Title VII action does not lie against the Individual Members, and

can only be brought against the School District at the employer.  See Busby v. City

of Orlando, 931 F.2d 764, 772 (11th Cir. 1991) as a practical matter, requiring

Coach Rodemaker to bring his Title VII claims in the Section 1983 Case would

have required amendment of the complaint to add both a party - the School District - and a cause of action - the Title VII claim.

Coach Rodemaker did not receive this "Right to Sue" letter until three months after the Individual Board Members filed their Notice of Appeal in the Section 1983 Action.  To bring the Title VII claims in the Section 1983 Action would have required a motion and order allowing addition of the School District as a defendant, and a motion and order allowing Rodemaker to amend his Complaint to include the Title VII Claims.  For these reasons alone, the "traditional rule" of res judicata invoked by the School District does not apply.  If, as the School District argues, this "traditional rule" "bars the filing of claims which were raised or could have been raised in an earlier proceeding," see School District Brief, Doc. 31-1, p. 9 (citing Shurick v. Boing Co., 622 F.3d 1114, 1116 (11th Cir. 2001)), there is no bar here.  The Title VII claims against the School District were not raised in the earlier proceeding, nor could they have been raised in the earlier proceeding.

This decision of the District Court must be reversed, and this case remanded to the District Court for further proceedings.

## ARGUMENT AND CITATIONS TO AUTHORITY

In the Eleventh Circuit, "a claim will be barred by prior litigation if all four of the following elements are present:  1) there is a final judgment on the merits; 2) the decision was rendered by a court of competent jurisdiction; 3) the parties, or those in privity with them, are in identical in both suits; and 4) the same cause of action is involved in both cases." Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1238 (11th Cir. 1999) (citing Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498 (11th Cir. 1990)); see also  Kaiser Aerospace & Elecs. Corp. v. Teledyne Indus., Inc. (In re Piper Aircraft Corp.), 244 F.3d 1289, 1296 (11th Cir. 2001).  "If even one of these elements is missing, res judicata is inapplicable."  In re Piper Aircraft Corp., 244 F.3d at 1296.

Coach Rodemaker does not dispute that there is a final judgment in the Section 1983 case, or that the courts addressing that case were courts of competent jurisdiction.  But this is where the agreements stop.  Res judicata does not apply in this case as the parties are not identical in both actions, and the same cause of action is not involved in both suits.

Issues raised in this appeal can only be properly evaluated against the following legal and factual points:

- The first case, <u>Rodemaker v. Lee</u>, et al., Case No. 7:20-cv-00075-HL, was brought against Warren Lee, Liz Shumpard, Tyra Howard, Debra Bell, and Kelisa Brown, in their Individual Capacities. (This prior action will hereinafter be referred to as the "Section 1981 Case.")

- The Section 1983 Case brought claims for Race Discrimination under 42 U.S.C. § 1981 and 1983. The Section 1983 case did not include a claim for Title VII race discrimination.

- The School District was not party to the Section 1981 Case.

The District Court concluded that the Section 1983 the "same parties or their privies" (Doc. 31, pp. 16 to 20). It is this ruling - that privity exists between the individual board members and the School District - which forms the primary basis for this appeal.

## A.    There is No Privity.

The claims brought against the Individual Board Members in the Section 1981 case were claims brought against them in their **<u>individual</u>**, not **<u>official</u>**, capacities. These are claims separate and apart from claims brought in this Title VII action against the School District. The School District cannot claim res judicata based on the prior adjudication in favor of the Individual Board Members who were sued in their individual capacities. On the facts of this case, the District Court committed plain error in concluding that the Individual Board Members and the School District were in "privity" in this Title VII Action.

- 23 -

Individual capacity and official capacity claims are clearly distinct.  Under Georgia law, "it not necessarily true that government officials are in privity with their agency when they are sued in their individual capacities." Sheba Ethiopian Rest., Inc. v. Dekalb Cty., 820 F. App'x 889, 897 (11th Cir. 2020) (citing Carson v. Brown, 348 Ga. App. 689 (2019)).  The same tenet holds true under federal law. Konikov v. Orange Cty., 276 F. App'x 916, 918-19 (11th Cir. 2008) (citing Hurt v. Pullman, Inc., 764 F.2d 1443, 1448 (11ᵗʰ Cir. 1985) ("Government employees in their individual capacities are not in privity with their government employer."); see also 18A Wright et al., Federal Practice and Procedure § 4458, at 567 & n.20 (2d ed. 2002) ("[A] judgment against a government or one government official does not bind a different official in subsequent litigation that asserts a personal liability against the official . . . ."); Lozman v. City of Riviera Beach, 713 F.3d 1066, 1080 n.7 (11th Cir. 2013) (referencing 18 Moore's Federal Practice - Civil § 131.40(2)(a)) ("Generally, a government official sued in his or her official capacity is considered to be in privity with the government, but a government official sued in his or her individual capacity is not."); Brewer v. Dupree, No. 00-T-543-N, 2003 U.S. Dist. LEXIS 25327, at *9 (M.D. Ala. Feb. 12, 2003) (A government official sued in his individual or personal capacity presents a different case than that of an official sued in his official capacity.); see also Andrews v. Daw, 201 F.3d 521, 526

(4th Cir. 2000) ("a government official in his official capacity is not in privity with himself in his individual capacity for purposes of res judicata.").[3]

Acknowledging this line of cases, the District Court looked to "other circumstances" to create the requisite privity between the Individual Board Members and the School District. In so doing, the Court creates an exception to the above-referenced rule that individual government officials sued in their individual capacities are not in privity with the government. This "exception" does not take into account the nature of the relationship between a government and its officials, but equates this relationship to the common law analysis of "principal and agent:"

> Defendant argues <u>res judicata</u> still precludes Plaintiff's claims against the Board because the Board members served as agents of the School Board. "A principal-agent relationship is one kind of 'substantive legal relationship' that establishes privity for claim preclusion purposes." <u>Echeverria [v. Bank of Am. N.A.]</u>, 632 F. App'x [1006], 1008 [11th Cir. 2015] (<u>quoting</u> <u>Taylor</u>, 553 U.S. at 894 & n.8). "[I]t is settled that a judgment exonerating a servant or agent from liability

---

[3] The School District argued that the Rodemaker has alleged that the Individual Board Members are its "agents." <u>See</u> School District Memorandum of Law in Support of Summary Judgment, Doc. 31-1, p. 11. However, this allegation is raised in relation to the Title VII claim, to establish the claims against the School District. In other words, Count II of the Complaint, is akin to an "Official Capacity" claim. "Official-capacity suits [] 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 3105 (1985) (citing <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658, 690, n. 55 (1978)).

- 25 -

bars a subsequent suit on the same cause of action against the master
or principal based solely on respondeat superior." <u>Citibank, N.A. v.
Data Lease Fin. Corp.</u>, 904 F.2d 1498, 1502 (11th Cir. 1990) (<u>quoting
Lober v. Moore</u>, 417 F.2d 714, 717-18  (D.C. Cir. 1969)).

(District Court Order, Doc. 51, p. 18).

This conclusion ignores the nature of government liability and immunity, a

body of law which is itself premised on the concept that a government entity

cannot be responsible for the torts of its officials under a theory of <u>respondeat</u>

<u>superior</u>.  <u>Monell v. Dep't of Social Services</u>, 436 U.S. 658, 690-692 (1978).

Thus, in a suit against a government entity under 42 U.S.C. § 1983, liability is

imposed

> 'only for acts for which [the entity] is actually responsible.'  <u>Marsh v.
> Butler County</u>, 268 F.3d 1014, 1027 (11th Cir. 2001) (<i>en banc</i>).
> Indeed, a [government entity] is liable only when the [entity's]
> 'official policy'  causes a constitutional violation.  <u>Monell</u>, 436 U.S. at
> 694.  Thus, [a plaintiff] must 'identify a municipal 'policy' or
> 'custom' that caused [his] injury.'  <u>Gold v. City of Miami</u>, 151 F.3d
> 1346, 1350 (11th Cir. 1998) (quotation marks omitted) (alteration in
> original) (<u>citing</u> <u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. 397, 403,
> 137 L. Ed. 2d 626, 117 S. Ct. 1382 (1997)).

<u>Grech v. Clayton Cty.</u>, 335 F.3d 1326, 1329 (11th Cir. 2003);[4] <u>see also</u> <u>City of</u>

<u>Canton v. Harris</u>, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203 (1989).[5]

---

[4]  The government entity at issue in <u>Grech</u> was a Georgia county.

[5]  "In <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658
(1978), we decided that a municipality can be found liable under § 1983 only

- 26 -

This rejection of respondeat superior liability as a basis for the liability of a government entity also precludes application of res judicata based on a common law "agency theory." If a government entity cannot be vicariously liable for the conduct of its individual officials, then the entity should not be able to argue that a prior adjudication in favor of its individual officials in their individual capacities has preclusive effect on a subsequent claim against the government entity itself.

The fact that the prior claims brought against the Individual Board Members were brought against them in their individual personal capacities is underscored by the fact that they each claimed entitlement to the defense of qualified immunity as a basis for seeking dismissal of Section 1983 Action. (See District Court Order denying Motion to Dismiss in the Section 1983 Action, Doc. 31-9, pp. 10-12).[6] "'[O]fficials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable

where the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983." Id., at 694-695.

[6] See also Howard's Brief in Support of Motion to Dismiss, Doc. 33-1, at pp. 10-13; Shumphard's Brief in Support of Motion to Dismiss, Doc. 33-2, at pp. 10-13; Bell's Brief in Support of Motion to Dismiss, Doc. 33-3, at p. 10-13; Brown's Brief in Support of Motion to Dismiss, Doc. 33-4, at pp. 10-13; and Lee's Brief in Support of Motion to Dismiss, Doc. 33-5 at pp. 10-13). Each of these briefs were filed in the Section 1983 action.

reliance on existing law.'" <u>Yeldell v. Cooper Green Hosp.</u>, 956 F.2d 1056, 1060

(11th Cir. 1992) (<u>citing</u> <u>Hafer v. Melo</u>, 502 U.S. 521, 112 S. Ct. 358, 362, 116 L.

Ed. 2d 301 (1991)).

    **1.**    **Illustrative case - <u>Andrews v. Daw</u>.**

In addressing application of res judicata to cases where the two cases in

issue involve a government official in his official and individual capacities, the

Fourth Circuit explained the "differing capacities rule:"

> As an initial matter, we note that the rule of differing capacities in the
> context of res judicata provides that '[a] party appearing in an action
> in one capacity, individual or representative, is not thereby bound by
> or entitled to the benefits of the rules of res judicata in a subsequent
> action in which he appears in another capacity.' Restatement
> (Second) of Judgments § 36(2) (1982). The rationale for this rule is
> that 'in appearing as a representative of another, a person should be
> free to take positions inconsistent with those he might assert in
> litigation on his own behalf or on behalf of others he represents in
> some other fiduciary capacity.' <u>Id.</u> § 36 cmt. a. Thus, at first blush,
> application of the rule of differing capacities counsels against a
> conclusion that a government employee in his official capacity is in
> privity with himself in his individual capacity.

<u>Andrews v. Daw</u>, 201 F.3d 521, 525 (4th Cir. 2000). The same analysis applies in

this Title VII Action against the School District.

The Individual Board Members in the first action "should have been free" to

take legal positions and raise defenses best suited to their own individual interests,

without fear or concern of how those positions impacted the liability of the School

District.  For example, an Individual Board Member in the Section 1983 Action

could acknowledge or admit that his decision was based on factors other than race

without fear of liability, because the under Section 1981/1983, the race must be the

sole motivation.  However, the same acknowledgment in the Title VII action would

have different legal consequences.  To establish liability for Title VII race

discrimination, race must only be a motivating factor.  In addition, the defense of

individual or qualified immunity is available to the Individual Board Members

when sued in their individual capacities.  Such a defense is not available to the

School District.  Finally, in the Section 1981/1983 Case, the Individual Board

Members were at risk of being personally liable for the damages sustained by

Coach Rodemaker.  In the Title VII Case, the liability is that of the government

entity, and the government entity alone.

The Fourth Circuit further explained why the difference in official-capacity

suits and individual-capacity suits supported application of the "differing-

capacities" rule.

> While 'personal capacity suits seek to impose personal liability upon a
> government official for actions he takes under color of state law,'
> official-capacity suits 'generally represent only another way of
> pleading an action against an entity of which an officer is an agent'
> and in essence are "suits against the entity.' Kentucky v. Graham, 473
> U.S. 159, 165-66, 87 L. Ed. 2d 114, 105 S. Ct. 3099 (1985) (internal
> quotation marks omitted). Because the real party in interest in an

official-capacity suit is the entity, a plaintiff can only recover damages from the entity itself, in contrast to a personal-capacity suit, in which a plaintiff can seek a judgment against the official's personal assets. See id. at 166. Furthermore, different legal theories of liability are required for the plaintiff, and different defenses are available to the defendant, in a personal-capacity action than in an official- capacity action. See id. at 166-67. These differences indicate that a government official in his official capacity does not represent 'precisely the same legal right" as he does in his individual capacity.'

Andrews v. Daw, 201 F.3d 521, 525 (4th Cir. 2000).

Although the Eleventh Circuit itself[7] has not relied on Daw, other circuits have cited it with approval: Goldstein v. Galvin, 719 F.3d 16, 23 (1st Cir. 2013) (second suit against official in his individual capacity not precluded by result in prior official capacity suit.);[8] Mitchell v. Chapman, 343 F.3d 811, 823 (6th Cir. 2003) (abrogated in part on other grounds by 14 Penn Plaza LLC v. Pyett, 556 U.S.

---

[7] District Courts within the Eleventh Circuit have cited Daws with apparent approval. See e.g., Blount v. Comm'r Culliver, No. 2:18-CV-970-WHA-CSC, 2021 U.S. Dist. LEXIS 231024, at *19 (M.D. Ala. Dec. 2, 2021); Sullivan v. Williams, No. 2:05-CV-1033-MEF, 2008 U.S. Dist. LEXIS 114827, at *9 (M.D. Ala. June 17, 2008); and Nicarry v. Cannaday, No. 6:03-cv-87-Orl-28DAB, 2006 U.S. Dist. LEXIS 95074, at *8 (M.D. Fla. Dec. 7, 2006).

[8] "This means, of course, that a public official, sued only in his official capacity, is a proxy for the government entity that employs him and is in privity with that entity. . . . The situation is quite different when an official is sued in his individual capacity. By definition, such a suit takes aim at the individual, not the government entity with which he is associated. Such a defendant is, therefore, not considered to be in privity with the government entity." Id at 23 (citations omitted).

- 30 -

247 (2009) ("[A] party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity."); James v. Heritage Valley Fed. Credit Union, 197 F. App'x 102, 105 (3d Cir. 2006) ("Privity also does not likely exist between a party sued in her official capacity and a party sued in her individual capacity."); Headley v. Bacon, 828 F.2d 1272, 1279 (8th Cir. 1987).[9] The Ninth Circuit and Tenth Circuits have recognized similar principals.

---

[9] "By contrast, a judgment against a government does not bind its officials sued in their personal capacities. Beard v. O'Neal, 728 F.2d 894, 896-97 (7th Cir. 1984) (FBI informant and officials sued in individual capacities not in privity with FBI agent who was defendant in prior unsuccessful Bivens-type action), cert. denied, 469 U.S. 825, 83 L. Ed. 2d 48, 105 S. Ct. 104 (1984); . . . Moreover, litigation involving officials in their official capacity does not preclude relitigation in their personal capacity. Roy v. City of Augusta, Maine, 712 F.2d 1517, 1521-1522 (1st Cir. 1983); cf. Unimex, Inc. v. HUD, 594 F.2d 1060, 1061 n.3 (5th Cir. 1979) (per curiam); Restatement (Second) of Judgments § 36(2) and comment e (1982); Wright, Miller & Cooper § 4458 at 508-09." Id. at 1279.

See <u>McLellan v. Perry</u>, 672 F. App'x 690, 691 (9th Cir. 2016)[10] and <u>Gonzales v.</u>

<u>Hernandez</u>, 175 F.3d 1202, 1206 (10th Cir. 1999).[11]

> **2.    Illustrative Case - <u>Johnson v. Alabama Department of Human</u>**
> **<u>Resources</u>.**

In <u>Johnson v. Ala. Dep't of Human Res.</u>, 546 F. App'x 863 (11th Cir. 2013),

the Eleventh Circuit recognized the distinction between officials sued in their

individual and official capacities and the application of res judicata.  In her first

suit, Johnson brought Title VII claims against the Jefferson County, Alabama

Department of Human Resources and the State of Alabama.  This first suit was

dismissed for failure to prosecute.  <u>Id</u>. at 867.

In her second suit, Ms. Johnson brought a Section 1983 action against the

Alabama Department of Human Resources (not the Jefferson County Alabama

Department of Human Resources), and two individuals in both their individual <u>and</u>

---

[10]  Res judicata barred Section 1983 suit against Nevada Director of Public Safety in official capacity where agency was party to prior administrative proceeding; claims against officials in their individual capacities not barred as "privity exists between the agency and Defendant Wright who is sued in his official capacity; but privity does not exist between the agency and the other three Defendants, who are sued in their individual capacities." <u>McLellan</u>, 672 Fed. Appx. at 691.

[11]  "The general weight of authority appears to be that while government employees are in privity with their employer in their official capacities, they are not in privity in their individual capacities." <u>Gonzales</u>, 175 F.3d 1206.

official capacities.  Id. at 867.  Recognizing the distinction between official and individual capacity claims, the Eleventh Circuit concluded that the individual capacity claims not included in the first Title VII action were not precluded:

> [P]rivity exists between the defendants in the Title VII case—the JCDHR and the state of Alabama—and some defendants here.  The JCDHR and the ADHR are both state government agencies or sub-agencies.  As for privity between the JCDHR and McClintock and Shelton in their official capacities, "a government official sued in his or her official capacity is considered to be in privity with the government."  Lozman v. City of Riviera Beach, Fla., 713 F.3d 1066, 1075 n.7 (11th Cir. 2013).  Privity, however, was lacking between the defendants in the Title VII case and  McClintock and Shelton in their individual capacities.

> * * *

> Thus, res judicata bars Johnson's claims against the official defendants here—the ADHR, and McClintock and Shelton in their official capacities. Res judicata does not bar Johnson's claims against McClintock and Shelton individually.

Johnson v. Ala. Dep't of Human Res., 546 F. App'x 863, 868 (11th Cir. 2013).

The Middle District of Alabama relied on Johnson in concluding that members of the school board in an employment suit sued in their individual capacities were not in privity with the school board.  Thus, res judicata did not preclude claims in a second suit against the board members in their individual capacities when the School Board itself was a defendant in the original case.

- 33 -

Johnson v. Barbour Cty. Bd. of Educ., No. 2:22-cv-84-ECM, 2022 U.S. Dist.

LEXIS 109322, at *14 (M.D. Ala. June 21, 2022).[12]

### 3.    Illustrative Case - Headly v. Bacon.

The Eighth Circuit's opinion in Headley v. Bacon, 828 F.2d 1272 (8th Cir.

1987) addresses privity issues analogous to this case in the context of subsequent

claims for violation of Section 1983 and Title VII.  Plaintiff Teresa Headley

_____

[12]  The Middle District of Alabama reasoned:

There is privity between the Board and the Board members in their official capacities because 'a government official sued in his or her official capacity is considered to be in privity with the government.' Lozman v. City of Riviera Beach, Fla., 713 F.3d 1066, 1075 n.7 (11th Cir. 2013).  But, the Board members in their individual capacities are not considered to be in privity with the Board in the first action. See Johnson v. Alabama Dep't of Hum. Res., 546 F. App'x 863, 868 (11th Cir. 2013) (holding under Alabama law that as to the state agency employees sued in their individual capacities in a second action '[p]rivity, however, was lacking between the defendants in the Title VII case and McClintock and Shelton in their individual capacities.'); Blount v. Culliver, 2021 U.S. Dist. LEXIS 231024, 2021 WL 7286015, at *7 (M.D. Ala. 2021) (explaining 'neither identity nor privity exists when a party is sued in his official capacity and then sued later in his individual capacity.'), report and recommendation adopted, 2022 U.S. Dist. LEXIS 9288, 2022 WL 178585 (M.D. Ala.), appeal dismissed, 2022 U.S. App. LEXIS 13907, 2022 WL 1576995 (11th Cir. Apr. 12, 2022). Therefore, the individual capacity claims against the Individual Defendants are not barred by res judicata or collateral estoppel in this case.

Johnson, 2022 U.S. Dist. LEXIS at *13.

brought her first suit against the City of Grand Island, Nebraska, alleging that she suffered "sexual harassment and discrimination on the basis of her sex" in violation of Title VII. Id. at 1274. Headley succeeded in this first case, and received "equitable relief consisting of back pay, front pay, and attorney's fees." Id.

She then filed a second action under 42 U.S.C. § 1982, 1983 and 1985 against three police officers in their individual and official capacities. The district court granted summary judgment to the defendants in the second Section 1983 action, concluding that those claims "should have been joined" with the prior Title VII claim against the City.

The Eight Circuit reversed, ultimately concluding that no privity existed between the individual defendants and the City. Part of the court's analysis included identification of the interests of the defendants in the first and second cases. Although the City in the first case, and the individual defendants in the second case "shared an interest in disproving the factual predicate of Headley's claims, their interests in several other aspects of the litigation were divergent and in one case even adverse." Id. at 1276.

The different interests at play included: the difference between the remedies available in a Title VII action (equitable relief) and the compensatory damages available in Section 1983 claims; that there is a right to a jury trial in a Section

1983 claim and not in a Title VII claim; and that the City, in the Section 1983

action, would have an interest in demonstrating that the conduct of the individual

capacity defendants was taken outside the scope of their duties as members of the

Board.  Id. at 1277.

The Headly panel also rejected the notion that privity was established

because the liability of the City "rested upon" the actions of the individual

defendants.  In a vicarious liability setting,

> "the injured person ordinarily is not required to join both (the primary
> obligor and the person vicariously liable) and may decide to bring suit
> in the first instance against only one of them.  . . . [In this situation,]
> the injured person's claims against the active wrongdoer and the
> person vicariously responsible for the latter's conduct are sometime
> only partially congruent.  There may be a basis of laiblity he can
> assert against one but not the other.  The rule of claim preclusion is
> properly applied with respect to the claim he has against them
> commonly but it should not apply to his independent claim against the
> obligor not sued in the first action.  If the rule of claim preclusion
> were applied to that independent claim, the effect would be to compel
> a joinder of parties therein which by hypotheses he is not required to
> make.

Id. at 1278 (quoting Restatement (Second) of Judgments, § 51 comments a, c).

- 36 -

**B.    The District Court Improperly Considered the "Counsel Issue" in Determining that Privity Existed between the Individual Board Members and the School District.**

In support of its conclusion that the individual Board Members and the

School District were in privity, the District Court cited the alleged "fact" that the

Board provided counsel to the individual Board Members in the Prior Action.  The

District Court stated:

> [Coach Rodemaker] also does not dispute [the School District's]
> assertion that the School Board provided counsel for the [Individual
> Board Members] in the previous action and exerted substantial control
> over the defense.

(Doc. 51, p. 20).  The District Court did not provide a citation to this statement.  It

was not included in the "Statement of Material Facts to which there is No Dispute

to be Tried," filed by the School District with its summary judgment motion.

(Doc. 3-2).   This argument was first raised by the School District in its reply brief,

submitted in further support of the motion for summary judgment.  (Doc. 37, pp. 5-

12).  In this reply, the School Board asserts:

> Third, a nonparty may be bound if she "assumed control over the
> litigation in which that judgment was rendered."  Taylor v. Sturgell,
> 553 U.S. 880, 895 (2008); see also Restatement (Second) of
> Judgments § 39 (1982) ("A person who is not a party to an action but
> who controls or substantially participates in the control of the
> presentation on behalf of a party is bound by the determination of
> issues decided as though he were a party.").  The School Board
> controlled the litigation. Counsel for the Board defended all five

> Individual Defendant Board Members and necessarily consulted with
> the School Board throughout the course of the prior litigation.

(Doc. 37, pp. 5-6).  As such, it is not an argument properly considered in these

summary judgment proceedings.  See Herring v. Secretary, Dep't of Corrections,

397 F.3d 1338, 1342 (11th Cir. 2005) ("As we have repeatedly admonished,

arguments raised for the first time in a reply brief are not properly before a

reviewing court."); see also Park City Water Auth., Inc. v. N. Fork Apartments,

L.P., No. 09-0240-WS-M, 2009 U.S. Dist. LEXIS 116190, at *5 n.2 (S.D. Ala.

Dec. 14, 2009) (collecting cases).

　　　There is no evidence in the record that the School District "controlled the

litigation" of the prior Section 1981 action, nor is there any evidence that the

School District provided counsel to the Individual Board members in the prior case

or in this case.  There is no testimony to this effect.  To the contrary, the School

District did not control the prior litigation as it was not a party.

　　　All that is known, and all that appears in the record, is that counsel

representing the Individual Board Members in the Section 1981 action represent

the School District in this action.  There is no evidence that counsel consulted with

the Board in the prior action or that the School District in any way controlled the

litigation.  And, as argued above, the interests of the Individual Board Members

and the School District were not necessarily aligned.  The Individual Board

Members had available to them defenses in the Section 1981/1983 Action which

were not available to the School District.  The Individual Board Members in fact

raised these defenses.

Second, the decision cited by the School District in support of this

contention, <u>Taylor v. Sturgell</u>, 553 U.S. 880 (2008), is not as broad as represented

in its brief, or as cited by the Court.  In <u>Taylor</u>, the Supreme Court addressed the

doctrine of "virtual representation."  Justice Ginsburg described the factual

scenario presented to the Court as follows:

> Petitioner Brent Taylor filed a lawsuit under the Freedom of
> Information Act seeking certain documents from the Federal Aviation
> Administration. Greg Herrick, Taylor's friend, had previously brought
> an unsuccessful suit  seeking the same records. The two men have no
> legal relationship, and there is no evidence that Taylor controlled,
> financed, participated in, or even had notice of Herrick's earlier suit.
> Nevertheless, the D. C. Circuit held Taylor's suit precluded by the
> judgment against Herrick because, in that court's assessment, Herrick
> qualified as Taylor's "virtual representative."

<u>Taylor v. Sturgell</u>, 553 U.S. 880, 885 (2008).  The Supreme Court ultimately

disapproved the "doctrine of preclusion by 'virtual representation,'" and based on

the record before it, concluded that "the judgment against Herrick does not bar

Taylor from maintaining this suit."  <u>Id</u>.

- 39 -

The road to this conclusion caused the court to evaluate the federal common law of res judicata and collateral estoppel, and it is in this context that the "control of the prior litigation" issue arose.  See id. at 891.[13]  But Sturgell addresses situations where a plaintiff not a party to the original claim may nevertheless be bound by the results of a previous unsuccessful claim brought by another plaintiff. Such is not the situation here.

## C.    The Same Cause of Action is not Involved in Both Suits.

In granting the School District's Motion for Summary Judgment, the District Court concluded that because Coach Rodemaker's Title VII Claim arises from the same core of operative facts as did this Section 1981/1983 Claim, he "could, and should, have raised his Title VII in the previous lawsuit."  (Doc. 51, p. 24). However, as discussed below, the two causes of action and the necessary defendant are different.  To bring the Title VII claim in the previous lawsuit would have required him to add the School District as a party.

---

[13]  "Our inquiry, however, is guided by well-established precedent regarding the propriety of nonparty preclusion. We review that precedent before taking up directly the issue of virtual representation."  Taylor v. Sturgell, 553 U.S. 880, 892, 128 S. Ct. 2161, 2171 (2008).

**1.    The Legal Cause of Action is Not Involved in Both Actions.**

"Title VII," a component of the Civil Rights Act of 1964, prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a)(1).  Such an unlawful employment practice is "established when the complaining party demonstrates that race [] was a motivating factor for any employment practice"  Id. at (m).  Coach Rodemaker, as a "person aggrieved" by the unlawful decision, may bring an action against the employer.  42 U.S.C.S. § 2000e-5(f)(1).  Coach Rodemaker has named his employer, the Valdosta City School District, as a defendant in this action.

"The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act.  Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991); see also Dearth v. Collins, 441 F.3d 931, 933 (11th Cir. 2010) ("relief under Title VII is available against only the employer and not against individual employees whose actions would constitute a violation of the Act, regardless of whether the employer is a public company or a private company.")

- 41 -

The prior ruling of the Eleventh Circuit was strictly limited to the claims raised against the Individual Board Members in their individual capacities.  But the Eleventh Circuit made no comment or ruling on whether or not Coach Rodemaker's Complaint in the Section 1983 action satisfied the pleading requirements for a Title VII claim.  The complaint in this action specifically alleges that the District's decision was "racially motivated," <u>see</u> Complaint, Doc. 1, para. 52, 66, 79, 87, 89, and clearly satisfies this requirement.

In seeking summary judgment, the School District argued that this Title VII action is barred by the doctrine of res judicata because it <u>could have</u> been asserted in the "prior action," the Section 1981 Case filed against Individual Board Members, in their individual capacities.  The School District argued that res judicata "bars the filing of claims which were raised or could have been raised in the earlier proceeding." (Brief of School District, Doc. 31-1, p. 9 (<u>citing</u> <u>Shurick v. Boing Co.</u>, 623 F.3d 114, 116 (11th Cir. 2001)).   However, the School District and the Court failed to recognize that to add the Title VII claims to the Section 1981 Case would have required the addition of the Title VII claim **and** the School District as a party.  Unless the School District was added, there would be no viable defendant for the Title VII claim.

The instant Title VII action, and the prior Section 1981 Case differ in the following material respects:  there are 1) different substantive cause of action - Title VII vs. Section 1981 claim for race discrimination; 2) different parties - the employer School District vs. five individual members of the School Board; and 3) different standards of proof - race must be a **motivating factor** in alleged discriminatory conduct in this Title VII case, compared to race being the only reason supporting the discriminatory conduct in the Section 1981 case.

Because the School District was not included as a Defendant in the original Section 1983 action, and because Title VII was not alleged or raised in Section 1983 action, the prior action does not act as <u>res judicata</u> to the instant action.

### 2.        There has been no Improper "Claim Splitting."

The School District instead argues that this Title VII action is barred by the doctrine of res judicata because it <u>could have</u> been asserted in the "prior action.  Its argues that res judicata "bars the filing of claims which were raised or could have been raised in the earlier proceeding."  Brief of School District, Doc. 31-1, p. 9 (<u>citing</u> <u>Shurick v. Boing Co.</u>, 623 F.3d 114, 116 (11th Cir. 2001)).  Contrary to the School District's assertion, the instant Title VII claim <u>could not</u> have been filed in the prior action because the School District <u>was not a party</u> to that action.     In advancing this argument, the School District and the District Court relied heavily

on the Eleventh Circuit's decision in <u>Jang v. United Techs. Corp.</u>, 206 F.3d 1147 (11th Cir. 2000). As discussed below, <u>Jang</u> is to be distinguished because the critical element for the application of res judicata - identity of parties - existed in both the original case and the second-filed action. No identity of parties exists here. The plaintiff in <u>Jang</u> was not faced with the hurdle of adding his employer to the prior action to bring his Title VII claim. This is a critical distinction.

In <u>Jang</u>, the plaintiff worked as an aerospace engineer for defendant United Technologies Corporation (hereinafter "UTC.") The plaintiff filed suit against UTC, alleging violations of the Americans with Disabilities Act , 42 U.S.C. § 12101-12213, the Florida Civil Rights Act, and breach of contract. <u>Jang</u>, 206 F.3d at 1148. The district court granted UTC's motion to dismiss, finding that 1) the ADA claim was barred because the plaintiff did not obtain a right to sue letter; 2) the Florida Civil Rights Act claims were time barred; and 3) the breach of contract claim was legally insufficient. <u>Id</u>.

The plaintiff subsequently obtained the necessary "right to sue" letter, and then brought a second action against the ***same defendant*** -- his employer UTC -- alleging the ***same cause of action*** -- violation of the ADA. The district court dismissed the second suit on the ground of res judicata.

The Eleventh Circuit affirmed, finding the existence of each of the four elements of res judicata: 1) prior decision by a court of competent jurisdiction, 2) final judgment on the merits, 3) identity of parties, and 4) the "prior and present causes of action are the same." Id. at 1149.

The Eleventh Circuit rejected the plaintiff's argument that he could not have brought the ADA claim in the first case because he did not have a "right to sue" letter. The Court employed a "claim splitting"[14] analysis, which prevents a plaintiff from filing "state law claims in one suit and then file a second suit with federal causes of action after receiving a 'right to sue' letter." Id. at 1149. In this analysis, the Court relied on cases from other jurisdictions. But, as addressed below, in each of those cases, the original suit and the subsequent precluded suit were brought against the identical defendant.

**a) Heyliger v. State Univ. & Cmty. Coll. Sys., 126 F.3d 849, 851 (6th Cir. 1997).** Plaintiff brought his original suit against his employer, alleging violation of state-law civil rights statues. Prior to filing the civil action, the

---

[14] Under more recent authority, the Eleventh Circuit has limited application of the "claim splitting" analysis. This analysis applies "only where a second suit has been filed before the first suit has reached a final judgment." Watkins v. Elmore, 745 F. App'x 100, 104 n.2 (11th Cir. 2018) (citing Vanover v. NCO Fin. Serv., Inc., 857 F.3d 833, 840 n.3 (11th Cir. 2017)). "Claim splitting" does not provide a valid basis for dismissal of this action.

plaintiff filed a complaint with the EEOC. The trial court granted summary judgment to the employer. While that order was on appeal, the EEOC issued a right to sue letter. Id. at 851.

During the pendency of the appellate proceedings, the plaintiff filed a separate Title VII action, again suing his employer. Id.[15] The Sixth Circuit rejected the plaintiff's argument that he was prevented from filing the Title VII action until the EEOC issued the right to sue letter. This rejection was fact based - and the Sixth Circuit focused on actions that could have been taken by the plaintiff to obtain his "right to sue" letter during the three year period that the case was pending in the trial court:

> Here, the significant date was 180 days after the date on which Heyliger filed his complaint with the EEOC, at which point Heyliger could have requested, and been entitled to receive from the Attorney General forthwith, a right-to-sue letter. See 42 U.S.C. § 2000e-5(f)(1); 29 C.F.R. § 1601.28(a)(1), (d)(2). . . . [H]ere the chancery court did not issue its judgment for almost three years, allowing far more time than necessary for Heyliger to obtain a right-to-sue letter before a judgment of the state court issued. Once that notice was in hand, Heyliger could have folded his Title VII claim into his action in state court, for, under Tennessee law, 'leave [to amend pleadings] shall be freely given when justice so requires.'

---

[15] The Heyliger court addressed two issues: "claim preclusion" or res judicata, and "issue preclusion," or collateral estoppel. The relevant analysis for this case is the "claim preclusion" discussion.

Id. at 855-856 (internal citations omitted).  Assuming that the trial court would have "observed these rules" if presented with a motion, the Sixth Circuit concluded that the Title VII claim "reasonably could have been litigated . . . in state court." Id. (citation omitted).

Thus, the Title VII claim was barred under Tennessee's iteration of "res judicata" because it "reasonably could have been" litigated in the prior suit.

**Critical Distinction.**  The defendant in both cases at issue in Heyliger was the plaintiff's employer.  The School Board was not a party in Coach Rodemaker's orignal action.  In order to have brought his Title VII claim in the prior suit, Coach Rodemaker would have been required to amend his complaint to add the School Board as a party.

**b)  Brzostowski v. Laidlaw Waste Sys., 49 F.3d 337, 339 (7th Cir. 1995):**  In this case, the plaintiff filed "breach of contract" action against his employer, which was dismissed with prejudice.

Less than a year after his termination, the employee filed an age discrimination claim with the EEOC. He obtained a right to sue letter, and then filed a second suit against his employer, bringing the age discrimination claim.  Id. at 338.  This second suit was dismissed on the grounds of res judicata.

- 47 -

In considering the propriety of the dismissal, the Seventh Circuit concluded that the age discrimination claim and the breach of contract claim were "identical" for purposes of res judicata.  The Seventh Circuit similarly rejected the employee's argument that he could not have brought the ADA claim in his original suit because he did not have the "right to sue" letter.  In its opinion, the plaintiff could have "delayed the filing of his first suit" or "requested that the court postpone or stay the first case."  Id. at 339.

**Critical Distinction.**  The defendant in both the first case and the second case was identical.  In this case, there is no identity.  The Board of Education is a distinct entity, separate and apart from individual board members who were previously sued in their individual capacities.

### c)  <u>Woods v. Dunlop Tire Corp.</u>, 972 F.2d 36 (2d Cir. 1992).

Employee alleged that she was terminated due to her race and sex.  She filed discrimination charges with the EEOC and a New York State agency.  Before the "right to sue" letter was issued, the employee initiated a civil action against her employer alleging violation of the Labor Management Relations Act ("LMRA"), arguing that her termination was made in violation of a collective bargaining agreement.  Id. at 37.

- 48 -

Before either the state agency or the EEOC issued necessary "right to sue" letters, the employee filed a Title VII action against her employer. The district court dismissed the second action, finding that because the issues of race and sex discrimination could have been raised in the first action, these claims were barred by the doctrine of res judicata. Id. at 38.

On appeal, the Second Circuit concluded that the there was an identity of the cause of action between the first and second suits. It further rejected the employee's argument that res judicata should not apply because the administrative proceedings had not yet been concluded at the time the original suit was filed. The remedy, according to the Second Circuit, was for the employee to file her LMRA claims, and seek to amend this suit once the Title VII claims became ripe. If the employee became concerned that the LMRA claims would be resolved before she received the "right to sue" letter, she could have sought a stay of the original action. Id. at 41.

*Critical Distinction:* The defendant employer was a party in both the original and subsequent lawsuit.

d) **Rivers v. Barberton Bd. of Educ., 143 F.3d 1029, 1031 (6th Cir. 1998)**. Another Sixth Circuit decision addressing the applicability of res judicata when Title VII claims are raised in a second civil action filed against the employer.

The Title VII claim was actually raised in the first action, but because the employee had not obtained a "right to sue" letter, the claims was dismissed. The employee filed a second action against the employer once she received the necessary letter. Stating that it was "constrained" to follow the prior circuit opinion in Heyliger, the Sixth Circuit concluded that res judicata barred the second action.

***Critical Distinction:*** The employer was the defendant in both the first and second suits. Also, the Title VII claim was actually raised in the first action, and dismissed.

Thus, Jang does not dispose of Coach Rodemaker's Title VII claims against the School District. The first case was brought against different defendants, who were not the employer. A Title VII claim lies only against the employer. "'The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act.'" Hinson v. Clinch Cty. Bd. of Educ., 231 F.3d 821, 827 (11th Cir. 2000) (quoting Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir.1991)). And, to bring the Title VII claims in the first action would have required addition of the employer as a party.[16]

---

[16] The School District does not argue that it was an indispensable party to the first action. Nor does is argue that it is entitled to the res judicata defense based because it **should have been** a party to the Prior Action. See Usher v. Johnson,

**D.    The District Court also Erred in Granting the School District's Motion for Summary Judgment on the Issue of Attorneys Fees and Punitive Damages.**

The District Court also concluded that because res judicata precluded Coach Rodemaker from pursuing his substantive claims against the School District, his dependent claims for Attorneys Fees (Count Four) and Punitive Damages (Count - Five) should be dismissed. (Order, Doc. 51, p. 25). The District Court made no finding as to the merits of these claims. Accordingly, if the ruling of the Court as to the School District's defense of res judicata is reversed, the case must be remanded to the District Court, for resolution of the Title VII claims, as well as for the claims for attorneys fees and punitive damages.

---

157 Ga. App. 420, 423 (1981) (party who was "indispensable" in the first action could raise res judicata defense to second action.)

## <u>CONCLUSION</u>

For the forgoing reasons, the decision of the District Court must be reversed, and the case remanded for further proceedings.

**THIS  23RD  DAY OF  JANUARY , 2023.**

SAVAGE & TURNER, P.C.

By:     /s/ Kathryn Hughes Pinckney
Brent J. Savage
Georgia Bar No. 627450
Kathryn Hughes Pinckney
Georgia Bar No. 376110

102 East Liberty Street, 8th Floor
Post Office Box 10600
Savannah Georgia 31412
Phone:  (912) 231-1140
Fax: (912) 232-4212
kpinckney@savagelawfirm.net
*Attorneys for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the page limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this document contains 11,763 words, excluding portions of the brief excluded by 11th Cir. R. App. P. 32-4.

I further certify this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Corel WordPerfect 2020 in 14-point Times New Roman.

**THIS  23RD  DAY OF  <u>JANUARY</u> , 2023.**

SAVAGE & TURNER, P.C.

By:    <u>/s/ **Kathryn Hughes Pinckney**            </u>
Brent J. Savage
Georgia Bar No. 627450
Kathryn Hughes Pinckney
Georgia Bar No. 376110

102 East Liberty Street, 8th Floor
Post Office Box 10600
Savannah Georgia 31412
Phone:  (912) 231-1140
Fax: (912) 232-4212
kpinckney@savagelawfirm.net
*Attorneys for Appellant*

A

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 23, 2023, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will automatically send notice to the following CM/ECF participants:

Thomas W. Joyce, Esq.
Brandon A. Oren, Esq.
William B. McDavid, Esq.
Jones & Cork, LLP
P. O. Box 6437
Macon, GA 31208
tom.joyce@jonescork.com
brandon.oren@jonescork.com
will.mcdavid@jonescork.com

Sam D. Dennis, Esq.
Sam D. Dennis, P.C.
1107 N. Patterson Street
PO Box 1865
Valdosta, GA 31603
sam@samdennislaw.com

W. Kerry Howell
W. KERRY HOWELL, LLC
230 Third Street
Macon, GA 31201
(478)745-0111
wkhowell_law@bellsouth.net

John D. Holt, Esq.
John D. Holt, P.C.
203 East Gordon Street
P. O. Box 1571
Valdosta, GA 31603
john@jdholtlaw.com

**THIS  23ᴿᴰ  DAY OF  JANUARY , 2023.**

SAVAGE & TURNER, P.C.

By:    /s/ *Kathryn Hughes Pinckney*
       Brent J. Savage
       Georgia Bar No. 627450
       Kathryn Hughes Pinckney
       Georgia Bar No. 376110

102 East Liberty Street, 8th Floor
Post Office Box 10600

B

Savannah Georgia 31412
Phone:  (912) 231-1140
Fax: (912) 232-4212
[kpinckney@savagelawfirm.net](mailto:kpinckney@savagelawfirm.net)
*Attorneys for Appellant*

C