No. 22-13300-A

# In the
# United States Court of Appeals
## for the Eleventh Circuit

---

ALAN RODEMAKER,

*Plaintiff-Appellant,*

v.

CITY OF VALDOSTA BOARD OF EDUCATION or, in the alternative, VALDOSTA CITY SCHOOL DISTRICT, WARREN LEE, LIZ SHUMPHARD, TYRA HOWARD, DEBRA BELL, and KELISA BROWN, individually as agents of the City of Valdosta Board of Education and/or the Valdosta City School District,

*Defendants-Appellees.*

---

On Appeal from the United States District Court for the
Middle District of Georgia
No. 7:21-cv-76-HL

---

### BRIEF OF APPELLEES

---

W. Kerry Howell
W. KERRY HOWELL, LLC
230 Third Street
Macon, GA 31201
(478) 745-0020
*Counsel for Defendants-Appellees*
*City of Valdosta Board of Education,*
*Warren Lee, and Kelisa Brown*

Thomas W. Joyce
William B. McDavid, Jr.
Brandon A. Oren
JONES CORK, LLP
435 Second Street, Suite 500
Macon, GA 31201
(478) 745-2821
*Counsel for Defendants-Appellees*
*City of Valdosta Board of Education,*
*Liz Shumphard, Tyra Howard, and*
*Debra Bell*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

COME NOW City of Valdosta Board of Education or, in the alternative, Valdosta City School District, Warren Lee, Liz Shumphard, Tyra Howard, Debra Bell, and Kelisa Brown, Defendants-Appellees in the above-captioned action, and pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1 file their Certificate of Interested Persons and Corporate Disclosure Statement as follows:

The undersigned counsel of record for City of Valdosta Board of Education or, in the alternative, Valdosta City School District, certify that the following is a full, complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1.   Adams, Carolyn (Attorney with Law Firm for Plaintiff-Appellant),

2.   American International Group, Inc. (Ticker: "AIG") (Conglomerate that includes AIG Property Casualty U.S., Inc., Stratford Insurance Company, and Western World Insurance Company),

3.   AIG Property Casualty U.S., Inc. (Parent Corporation of Western World Insurance Company),

4.    Bell, Debra, Individually as Agent of the City of Valdosta Board of Education and/or the Valdosta City School District (Defendant-Appellee),

5.    Brown, Kelisa, Individually as Agent of the City of Valdosta Board of Education and/or the Valdosta City School District (Defendant-Appellee),

6.    City of Valdosta Board of Education or, in the Alternative, Valdosta City School District (Defendant-Appellee),

7.    Dennis, Sam D. (Attorney for Plaintiff-Appellant),

8.    Edwards, Winston (Attorney with Law Firm for Plaintiff-Appellant),

9.    Fulp & Holt, PC (Law Firm representing Plaintiff/Appellant),

10.   Holt, John D. (Attorney for Plaintiff-Appellant),

11.   Howard, Tyra, Individually as Agent of the City of Valdosta Board of Education and/or the Valdosta City School District (Defendant-Appellee),

12.   Howell, W. Kerry (Attorney for Defendants-Appellees City of Valdosta Board of Education or, in the Alternative, Valdosta City School District, Kelisa Brown and Warren Lee),

13.   John D. Holt, P.C. (Law Firm for Plaintiff-Appellant),

14. Jones Cork, LLP (Law Firm for Defendants-Appellees City of Valdosta Board of Education or, in the Alternative, Valdosta City School District, Debra Bell, Tyra Howard, and Liz Shumphard),

15. Joyce, Thomas W. (Attorney for Defendants-Appellees City of Valdosta Board of Education or, in the Alternative, Valdosta City School District, Debra Bell, Tyra Howard, and Liz Shumphard),

16. Lawson, Honorable Hugh (Judge, United States District Court for the Middle District of Georgia),

17. Lee, Warren, Individually as Agent of the City of Valdosta Board of Education and/or the Valdosta City School District (Defendant-Appellee),

18. McDavid, William B. (Attorney for Defendants-Appellees City of Valdosta Board of Education or, in the Alternative, Valdosta City School District, Debra Bell, Tyra Howard, and Liz Shumphard),

19. Mikell, Samuel (Attorney for Plaintiff-Appellant),

20. O'Reilly, Shannon (Attorney with Law Firm for Plaintiff-Appellant),

21. Oren, Brandon A. (Attorney for Defendants-Appellees City of Valdosta Board of Education or, in the Alternative, Valdosta City School District, Debra Bell, Tyra Howard, and Liz Shumphard),

22.  Pinckney, Kathryn H. (Attorney with Law Firm for Plaintiff-Appellant),

23.  Rodemaker, Alan (Plaintiff-Appellant),

24.  Sam D. Dennis, P.C. (Law Firm for Plaintiff-Appellant),

25.  Savage, Brent J. (Attorney for Plaintiff-Appellant),

26.  Savage, Brent, Jr. (Attorney with Law Firm for Plaintiff-Appellant),

27.  Savage, Turner, Pinckney & Savage (Law Firm for Plaintiff-Appellant),

28.  Shumphard, Liz, Individually as Agent of the City of Valdosta Board of Education and/or the Valdosta City School District (Defendant-Appellee),

29.  Sprouse, Zachary R. (Attorney with Law Firm for Plaintiff-Appellant),

30.  Stratford Insurance Company (Liability Insurer for Defendants-Appellees),

31.  Turner, Robert Bartley (Attorney with Law Firm for Plaintiff-Appellant),

32.  W. Kerry Howell, LLC (Law Firm for Defendants-Appellees Kelisa Brown and Warren Lee),

33.  Western World Insurance Company (Affiliated with Stratford Insurance Company).

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Defendant-Appellee City of Valdosta Board of Education or, in the alternative, Valdosta City School District is a governmental entity which does not have a parent corporation and there is not a publicly held corporation which owns 10% or more of its stock. The individual Defendants-Appellees are natural persons.

This 20th day of March, 2023.

/s/ W. Kerry Howell
W. Kerry Howell
W. KERRY HOWELL, LLC
230 Third Street
Macon, GA 31201
(478) 745-0020
*Counsel for Defendants-Appellees*
*City of Valdosta Board of*
*Education, Warren Lee, and*
*Kelisa Brown*

/s/ Thomas W. Joyce
Thomas W. Joyce
William B. McDavid, Jr.
Brandon A. Oren
JONES CORK, LLP
435 Second Street, Suite 500
Macon, GA 31201
(478) 745-2821
*Counsel for Defendants-Appellees*
*City of Valdosta Board of*
*Education, Liz Shumphard, Tyra*
*Howard, and Debra Bell*

**STATEMENT REGARDING ORAL ARGUMENT**

Rodemaker has waived his appeal of the district court's grant of the individual Defendants-Appellees' motions to dismiss. As to that portion of the district court's order, oral argument is not necessary.

As to the district court's grant of its motion for summary judgment, Defendants-Appellees respectfully submit that the facts and legal arguments are adequately presented in the briefs and record and the decisional process will not be significantly aided by oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...............................................C-1

STATEMENT REGARDING ORAL ARGUMENT.........................................i

TABLE OF CONTENTS ...................................................................................ii

TABLE OF CITATIONS.................................................................................iv

JURISDICTIONAL BASIS ...........................................................................viii

STATEMENT OF THE ISSUES.......................................................................1

STATEMENT OF THE CASE...........................................................................2

    A. Factual Allegations .................................................................................2

    B. Procedural History .................................................................................3

    C. Standard of Review.................................................................................5

SUMMARY OF THE ARGUMENT .................................................................5

ARGUMENT AND CITATIONS OF AUTHORITY .......................................8

   I.   *Rodemaker I* and *Rodemaker II* are the "same cause of action" for purposes of claim preclusion because they are based on the same facts...............................8

   II.  The district court correctly found that the five boardmembers were acting as agents of the School Board with respect to the allegations of the Complaint ........................................................................................11

   III.  Rodemaker's proposed rule that governmental entities can never be in privity with their officers or employees is not supported by authority...........................16

       A.   The *Monell* line of cases cited by Rodemaker supports, rather than undermines, the district court's finding of privity.................................... 17

B.   The persuasive authority weighs against Rodemaker's sweeping privity rule.................................................................................21

C.   The cases Rodemaker cites do not support his argument that a governmental entity can never be in privity with its officers or employees...............................................................................28

D.   The Restatement (Second) of Judgments supports a finding of privity here.................................................................................32

E.   Rodemaker's rule would undermine the interests advanced by claim preclusion, uniquely disfavor public bodies, and create perverse incentives ...........................................................................34

CONCLUSION ......................................................................... 37

CERTIFICATE OF COMPLIANCE ..........................................40

CERTIFICATE OF SERVICE .................................................. 41

# TABLE OF CITATIONS

**Cases:**

*Andrews v. Daw*, 201 F.3d 521, 525 (4th Cir. 2000)............................................23, 30

*Barker v. Geo Grp., Inc.*, 2012 WL 3264545, at *1 (M.D. Fla. Aug. 10, 2012).........36

*Brown v. Felsen*, 442 U.S. 127 (1979) ....................................................................34

*Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1502
   (11th Cir. 1990)............................................................1, 7, 11, 13, 14, 18, 20

*Collado v. J. & G. Transp., Inc.*, 820 F.3d 1256, 1259 n.3 (11th Cir. 2016)..............28

*Conner v. Reinhard*, 847 F.2d 384 (7th Cir. 1988)............................................25, 26

*Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1235 (11th Cir. 2020) ...........................15

*Cycle Chem, Inc. v. Jackson*, 465 F. App'x 104 (3d Cir. 2012).................................23

*Davis v. Davis*, 551 F. App'x 991 (11th Cir. 2014) ......................................14, 22, 31

*Dean v. Mississippi Bd. of Bar Admissions* 394 F. App'x 172 (5th Cir. 2010)...........24

*E.E.O.C. v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1285 (11th Cir. 2004).............4, 23

*Echeverria v. Bank of Am., N.A.*, 632 F. App'x 1006, 1008 (11th Cir. 2015).............14

*Geduldig v. Aiello*, 417 U.S. 484 (1974) ...................................................................28

*Goldstein v. Galvin*, 719 F.3d 16, 23 (1st Cir. 2013)............................................23, 33

*Gonzales v. Hernandez*, 175 F.3d 1202, 1203 (10th Cir. 1999) ................................27

*Green v. Mansour*, 474 U.S. 64, 71–73, 106 S.Ct. 423, 427–29 (1985) ....................31

*Griswold v. Cnty. of Hillsborough*, 598 F.3d 1289, 1292 (11th Cir. 2010)...............12

*Headley v. Bacon*, 828 F.2d 1272, 1274 (8th Cir. 1987) ..........................................29

*Jang v. United Techs. Corp.*, 206 F.3d 1147, 1149 (11th Cir. 2000) ...................9, 10

*Johnson v. State of Alabama Dep't of Hum. Res.*, 2012 WL 12892180, at *3;
546 F. App'x 863, 868 (11th Cir. 2013) ................................................28, 29,

*Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985)....................................16, 30, 31

*King v. Bd. of Educ. of City of Buford*, 214 Ga. App. 325, 327 (1994).......................2

*Kirkhart v. Keiper*, 805 N.E.2d 1089, 1093 (Oh. 2004) ..........................................25

*Konikov v. Orange Cty.*, 276 F. App'x 916, 918-19 (11th Cir. 2008)........................29

*Lamb v. Modly*, 2021 WL 1198158, at *4-*8 (D. Md. Mar. 30, 2021).....................17

*Licari v. City of Chicago*, 298 F.3d 664, 665 (7th Cir. 2002) ..................................26

*Lobo v. Celebrity Cruises, Inc.,* 704 F.3d 882, 893 (11th Cir. 2013)..................1, 6, 8

*Mandarino v. Pollard*, 718 F.2d 845, 850 (7th Cir. 1983)..................................22, 25

*McIntyre v. Fulwood*, 892 F. Supp. 2d 209, 215 (D.D.C. 2012) ..........................27, 35

*Mitchell v. Chapman*, 343 F.3d 811, 823 (6th Cir. 2003) .......................................33

*Monell v. Dep't of Social Services,* 436 U.S. 658 (1978) ................17, 18, 19, 20, 21

*Moore, Successor Tr. of Clarence M. Moore & Laura P. Moore Tr. v.
Hiram Twp., Ohio*, 988 F.3d 353, 355 (6th Cir. 2021)....................................24

*N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1560 (11th Cir. 1990)..................................9, 11

*NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015) .......................31

*\*Pembaur v. City of Cincinnati*, 475 U.S. 469, 474 (1986) .........................15, 17, 19

*Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1325 (11th Cir. 2003) ..............................19

*Rodemaker v. City of Valdosta Bd. of Educ.*, 2022 WL 3927821, at *1
(M.D. Ga. Aug. 31, 2022).............................................................................. 2

*Rodemaker v. Shumphard*, 859 F. App'x 450, 453 (11th Cir. 2021)...........................3

*Ruple v. City of Vermillion, S.D.*, 714 F.2d 860 (8th Cir. 1983)..............................26

*Schuster v. Martin*, 861 F.2d 1369, 1373 (5th Cir. 1988) ..........................22, 23, 24

*Sheba Ethiopian Rest., Inc. v. DeKalb Cnty., Georgia*, 820 F. App'x 889 (11th Cir. 2020) ...................................................................................7, 21, 23

*Taylor v. Sturgell,* 553 U.S. 880, 892, 894 & n. 8 (2008); 128 S.Ct. 2161, 2172-73 .................................................................................1, 12, 16, 17

*United States v. Campbell*, 26 F.4th 860, 871 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 95 (2022).........................................................................................5

*United States v. Villarreal*, 613 F.3d 1344, 1349 (11th Cir. 2010)...........................12

*Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017) ....................10

*Woods v. Dunlop Tire Corp.,* 972 F.2d 36, 41 (2d Cir.1992).......................................9

*Wright v. City of St. Petersburg*, 833 F.3d 1291, 1294 (11th Cir. 2016)...............5, 22

**Statutes:**

5 U.S.C. § 552a ...........................................................................................................27

28 U.S.C. § 1291 .......................................................................................................viii

28 U.S.C. § 1331 .......................................................................................................viii

28 U.S.C. § 2241 .........................................................................................................27

42 U.S.C. § 1981 ...........................................................................................................3

42 U.S.C. § 1983 ...........................................................................................................3

42 U.S.C. § 1985 ...........................................................................................................4

42 U.S.C. § 2000e *et seq*...........................................................................................viii

Fed. R. Civ. P. 20(a)(2)..................................................................................................9

GA. CONST. art. VIII, § 5, ¶ II......................................................................................20

O.C.G.A. § 20-2-942(a)(4), (b)......................................................................................2

**Other Sources/Cites:**

Restatement (Second) of Judgments § 36 cmt. b (1982)...........................................32

Restatement (Second) of Judgments § 36 cmt. c (1982)............................................32

Restatement (Second) of Judgments § 36(2) (1982) ...........................................30, 32

Restatement (Second) of Judgments § 49 cmt. a (1980)...........................................13

## JURISDICTIONAL BASIS

1. The district court had subject-matter jurisdiction of the case pursuant to 28 U.S.C. § 1331, as it arose under laws of the United States, specifically 42 U.S.C. § 2000e *et seq*.

2. This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1291 because it is an appeal from a final judgment of the district court that dismissed all claims.

3. This appeal is timely because the district court entered final judgment on August 31, 2022, and Appellant filed a notice of appeal on September 30, 2022.

## STATEMENT OF THE ISSUES[1]

1. When two causes of action arise out the same nucleus of operative fact or are based on the same factual predicate, they are considered the same cause of action for purposes of claim preclusion. *Lobo v. Celebrity Cruises, Inc.,* 704 F.3d 882, 893 (11th Cir. 2013). Rodemaker refuses to apply that test, but instead argues that the causes of action in *Rodemaker I* and *Rodemaker II* arise under different statutes, that those statutes have different elements, and that asserting both claims in the prior action would have required joinder of an additional defendant. Do any of those circumstances require courts to apply a different test from the one identified in *Lobo*?

2. It is undisputed that when a party sues an agent, loses, then sues the principal solely for the acts of the agent, the principal and agent are in privity for purposes of claim preclusion. *See Taylor v. Sturgell,* 553 U.S. 880, 894 & n. 8 (2008); *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1502 (11th Cir. 1990).

Is a court required to disregard those principles whenever the party invoking claim preclusion is a governmental entity?

---

[1] As discussed further below, Rodemaker waived his appeal of the district court's grant of the individual Defendants-Appellees' motions to dismiss by his statement that "Appellant does not challenge" the district court's ruling on the motion to dismiss. Appellant's Brief, Doc. 19 at 23-24.

1

## STATEMENT OF THE CASE

### A. Factual Allegations

Rodemaker began coaching football at Valdosta High School in 2010 and became head coach in 2016. At a School Board meeting in January 2020, the Superintendent recommended offering Rodemaker a supplemental coaching contract for the 2020-2021 school year. The Board, acting through a majority of five of its members, instead voted not to offer that contract.[2] The five members of the majority were African-American; the other four were white. In February 2020, the Board voted again on Rodemaker's coaching contract, and the result was the same. *Rodemaker v. City of Valdosta Bd. of Educ.*, 2022 WL 3927821, at *1 (M.D. Ga. Aug. 31, 2022).

### B. Procedural History

On April 23, 2020, Rodemaker, who is white, sued the five individuals whose votes comprised the Board's majority, alleging race discrimination under 42 U.S.C.

---

[2] The coaching contract was supplemental to his teaching contract. For ease of discussion, the District will refer to this supplemental contract simply as "his coaching contract" or "his contract." Also, Plaintiff frequently mischaracterizes the School Board's vote as a decision to "non-renew" his coaching contract. However, a pay supplement to coach football is not a renewable contract, and the employee has no property interest in that position under Georgia law. O.C.G.A. § 20-2-942(a)(4),(b); *King v. Bd. of Educ. of City of Buford*, 214 Ga. App. 325, 327 (1994). Though the difference probably does not matter for purposes of analyzing the application of claim preclusion, Rodemaker's Title VII claim is more accurately characterized as failure to hire than wrongful termination.

§ 1981 and § 1983 ("*Rodemaker I*").[3] The following day, he filed a Charge of Discrimination with the Equal Opportunity Employment Commission, alleging the decision not to offer him a coaching contract was motivated by racial animus.

In May of 2020, the individual Defendants moved to dismiss the § 1981 claims for failure to state a claim. While that motion was pending, in July 2020, Rodemaker filed a second charge of discrimination. The district court denied the motion to dismiss in December 2020, and the defendants invoked the denial of qualified immunity to file an interlocutory appeal. While the appeal was pending, the EEOC issued a "Dismissal and Notice of Rights" on March 22, 2021. On June 8, 2021, this Court addressed the merits first and held that Rodemaker had failed to state a claim. *Rodemaker v. Shumphard*, 859 F. App'x 450, 453 (11th Cir. 2021).

---

[3] In addition to *Rodemaker I* and the present case, Rodemaker or his wife filed several other lawsuits arising out of this matter: (i) a suit by Rodemaker's wife that, as amended, sought an injunction directing the School Board to offer her husband a coaching contract, sought to disqualify Warren Lee from holding office, and asserted loss of consortium against the School Board and the individual Defendants (Sup. Ct. of Lowndes County, Civil Action No. 2020-CV-0534); (ii) a suit against Ernest James Usher, III for defamation related to allegations of embezzlement (Sup. Ct. of Lowndes County, Civil Action No. 2020-CV-0630); (iii) a suit against the City of Valdosta School District's Chief Financial Officer and Valdosta High School's Athletic Director for defamation related to an incident where Rodemaker used a debit card to purchase alcoholic beverages (Sup. Ct. of Lowndes County, Civil Action No. 2021-CV-0152); (iv) a declaratory judgment action against the School Board and four of the individual Defendants for the Board's decision not to accept his settlement offer (Sup. Ct. of Lowndes County, Civil Action No. 0460); and (v) against the School Board and the individual Defendants for allegedly placing him in a false light (Sup. Ct. of Lowndes County, Civil Action No. 2021-CV-1003).

Ten days later, Rodemaker filed this action, now seeking damages against the individual Defendants under Title VII and 42 U.S.C. § 1985 and against the City of Valdosta Board of Education under Title VII ("*Rodemaker II*"). The individual Defendants moved to dismiss. Docs. 7, 8, 11-13. On September 8, 2021, the district court entered judgment in *Rodemaker I*, and shortly thereafter, the School Board moved for summary judgment in *Rodemaker II* on grounds of res judicata (or "claim preclusion").

The district court granted the individual Defendants' motions to dismiss, finding that the individual boardmembers could not be sued in their individual capacities under Title VII and that because the boardmembers were "agents acting on behalf of a single entity," they could not conspire with themselves. Doc. 21-3 at 26-30. The district court also granted the School Board's motion for summary judgment, finding that the claims in *Rodemaker I* and *Rodemaker II* arose from the same facts and that the School Board was in privity with the five individuals for purposes of claim preclusion. The district court also denied Rodemaker's motion for reconsideration. Doc. 21-3 at 82-86.

**C. Standard of Review**

The Court reviews the district court's application of claim preclusion de novo. *E.E.O.C. v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1285 (11th Cir. 2004) (citation omitted). "However, whether a party is in privity with another for preclusion

purposes is a question of fact that is reviewed for clear error." *Id.* (citations omitted).

Moreover, this Court may "affirm for any reason supported by the record, even if the district court did not rely on that reason. *Wright v. City of St. Petersburg*, 833 F.3d 1291, 1294 (11th Cir. 2016) (quotation marks omitted).

## SUMMARY OF THE ARGUMENT

The district court correctly granted the individual defendants' motions to dismiss. In his discussion of the procedural history in his brief, Rodemaker stated that the district court dismissed his claims against the individual boardmembers as "pre-empted by Title VII" and as "barred by the 'intracorporate conspiracy doctrine.'" Doc. 19 at 23-24. He stated that "Appellant does not challenge that ruling." *Id.* at 24. Moreover, Rodemaker previously acknowledged that the Title VII claims against the individuals were properly dismissed. Rodemaker's Motion for Reconsideration, Doc. 21-3 at 52. Accordingly, those claims have been abandoned.

The district court correctly granted the School Board's motion for summary judgment because Rodemaker's Title VII claims in *Rodemaker II* were barred by claim preclusion. Rodemaker does not address the motions to dismiss in his initial brief, so those issues are deemed abandoned. *United States v. Campbell*, 26 F.4th 860, 871 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 95 (2022).

Rodemaker's Title VII and § 1981 claims, even though they are different statutes, are the "same cause of action" for purposes of preclusion because they arise

from the same facts. "A cause of action is the same for *res judicata* purposes if it 'arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action.'" *Lobo v. Celebrity Cruises, Inc.,* 704 F.3d 882, 893 (11th Cir. 2013) (citation omitted). To determine whether a claim arises from a common nucleus of operative fact, the test is "whether the same facts are involved in both cases, so that the present claim could have been effectively litigated with the prior one." *Id.* Applying that test, Rodemaker's claims in the Title VII lawsuit arise from exactly the same facts as his prior lawsuit: the vote of a five-member majority of the School Board to not offer him a coaching contract. *Rodemaker II* is not based on any facts beyond those in *Rodemaker I*. Nowhere in his briefs, both at the trial level and in his Appellant's Brief, does he argue otherwise.

Instead, Rodemaker simply ignores the well-established "same nucleus of operative fact" test. In his brief, he argues that asserting his Title VII claim in the prior proceeding would have required adding a new party, the School Board. He also argues that Title VII and 42 U.S.C. § 1981 are different statutes—which is true, as far as it goes—and that Title VII, unlike § 1981, allows for motivating-factor claims. Doc. 19 at 42-43. Rodemaker makes no attempt to connect those observations to this Court's "same cause of action" jurisprudence. The two claims clearly arise out of the same factual predicate, so the "same cause action" prong is satisfied.

On privity, Rodemaker doesn't dispute[4] that the boardmembers and School Board are in a principal-agent relationship with respect to the vote, nor that such a relationship normally establishes privity. *See Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1502 (11th Cir. 1990) (principal-agent relationship). Instead, he argues the normal rules don't apply to governmental entities.

Rodemaker's argument boils down to a proposal that this Court apply a special rule to governmental entities: that even where a private entity would benefit from a prior judgment in favor of its officers or employees, the government never can. Rodemaker's proposed rule is arbitrary. It harms judicial efficiency, uniquely disadvantages public entities, and benefits no one (except plaintiffs, who would get a second bite at the apple). In an unpublished case, this Court has already rejected that argument. *Sheba Ethiopian Rest., Inc. v. DeKalb Cnty., Georgia*, 820 F. App'x 889 (11th Cir. 2020) (finding defendants in their individual capacities were in privity with the county). The Court should decline Rodemaker's invitation to declare an all-or-nothing exception to the normal rules of privity law and should affirm the district court's judgment.

---

[4] In fact, Rodemaker specifically alleged that "each of the Individual Defendants acted as agents of Defendant School Board and/or Defendant School District." Doc. 21-1 at 33 ¶ 75.

## ARGUMENT AND CITATIONS TO AUTHORITY

I.  **_Rodemaker I_ and _Rodemaker II_ are the "same cause of action" for purposes of claim preclusion because they are based on the same facts**

"A cause of action is the same for res judicata purposes if it 'arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action.'" _Lobo v. Celebrity Cruises, Inc.,_ 704 F.3d 882, 893 (11th Cir. 2013) (citation omitted). To determine if a claim arises from a common nucleus of operative fact, the test is "whether the same facts are involved in both cases, so that the present claim could have been effectively litigated with the prior one." _Id._

_Rodemaker I_ and the current suit arise from the same factual basis: the School Board's vote to not extend Rodemaker's year-to-year supplemental coaching contract. Rodemaker has never disputed that. Instead, in his brief, Rodemaker completely ignores the "same nucleus of operative fact" test. Doc. 19 at 59-61. He doesn't even make an argument that he can satisfy that standard.

Instead, he makes three arguments, none relevant to the applicable standard. First, he argues that Section 1981 and Title VII are different statutes. But this Circuit has made clear that "claim preclusion 'applies not only to the precise legal theory presented in the prior case, but to all legal theories and claims arising out of the same nucleus of operative fact.'" _Lobo_, 704 F.3d at 893 (citation omitted). Second, he argues the School Board and the five individuals who comprised the School Board's majority vote against offering Rodemaker a coaching contract are "different

parties[.]" Again, true enough, but claim preclusion applies not only to parties to the prior suit, but also to their privies. *See* Section II, *infra*. Finally, Rodemaker argues that Title VII allows for mixed-motive claims, while Section 1981 does not. However, "*res judicata* operates to preclude not only the issues raised in the prior action, but issues which could have been raised in the prior action." *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1561 (11th Cir. 1990).

Anticipating this argument, Rodemaker argues that "the instant Title VII claim <u>could not</u> have been filed in the prior action because the School District <u>was not a party</u> to that action." Doc. 19 at 61 (emphasis in original). It is not at all clear why Rodemaker thinks he was unable to add the School Board in *Rodemaker I*: the Federal Rules of Civil Procedure allow permissive joinder. *See* Fed. R. Civ. P. 20(a)(2). Further, inasmuch as his Title VII claims against the School Board were not yet exhausted at the EEOC level, he could have either (1) waited until he received his right-to-sue letter to bring all his claims at once or (2) moved to stay until he could amend to add his Title VII claims. *Jang v. United Techs. Corp.*, 206 F.3d 1147, 1149 (11th Cir. 2000) (citing *Woods v. Dunlop Tire Corp.,* 972 F.2d 36, 41 (2d Cir. 1992) for the principle that "plaintiffs may avoid claim preclusion by filing their other claims and seeking a stay to await the Title VII administrative proceeding or by filing the other claims and then amending after obtaining the right to sue letter.").

9

Rodemaker tries to distinguish *Jang* in two ways. First, he claims that the Court in *Jang* "employed a 'claim splitting' analysis" which, he says, this Court has since limited to cases where plaintiff filed a second suit before the first suit reached final judgment. But *Jang* did not employ a "claim splitting" analysis; rather, it applied claim preclusion. The Court in that case only used the verb "split" to describe how plaintiff handled his claims:

> plaintiffs may not split causes of action to bring, for example, state law claims in one suit and then file a second suit with federal causes of action after receiving a 'right to sue' letter . . . res judicata barred Appellant from splitting his causes of action and bringing his ADA claim after his first suit proceeded to a judgment on the merits.

*Jang v. United Techs. Corp.*, 206 F.3d 1147, 1149 (11th Cir. 2000). In context, it is clear that the Court used "split causes of action" to describe plaintiff's vexatious and inefficient litigation approach of dividing his claims between two different suits. The Court did not intend to signal by that language that it was applying "claim splitting" doctrine instead of claim preclusion; to the contrary, the Court expressly stated it was applying claim preclusion. *Id*. at 1148 & n.1.[5]

Second, Rodemaker argues that *Jang* relied on cases where claim preclusion barred a claim against the same defendant, rather than a privy. However, *Jang*

---

[5] In any event, it is a distinction without a difference: the Court's test for claim-splitting is "whether the first suit, assuming it were final, would preclude the second suit." *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017). In other words, the claim-splitting analysis applies the same test as claim preclusion.

required potential Title VII plaintiffs to bring all their claims in one action without splitting them; nothing in its reasoning depended on whether the defendant was the same in both actions or a privy. Further, by seemingly arguing (without supporting authority) that the "same cause of action" prong is different when the party invoking claim preclusion is a privy, Rodemaker conflates the third and fourth prongs of claim preclusion analysis. By never even acknowledging the established test for the fourth prong—whether the claims arise "from the same nucleus of operative fact"—Rodemaker goes farther and farther afield.

For those reasons, the Court should affirm the district court's ruling that *Rodemaker I* and *Rodemaker II* were the same cause of action for purposes of claim preclusion.

## II. The district court correctly found that the five board members were acting as agents of the School Board with respect to the allegations of the Complaint

"The doctrine of res judicata, or claim preclusion, bars the filing of claims which were raised or could have been raised in an earlier proceeding." *Citibank, N.A. v. Data* Lease Fin. Corp., 904 F.2d 1498, 1501 (11th Cir. 1990). It applies to parties or their privies. *Id.* "Privity is defined as 'a relationship between one who is a party of record and a nonparty that is sufficiently close so a judgment for or against the party should bind or protect the nonparty.'" *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1560 (11th Cir. 1990) (internal quotation marks and citation omitted).

11

A nonparty is in privity for purposes of res judicata in one of six circumstances: "(1) the nonparty agreed to be bound by the litigation of others; (2) a substantive legal relationship existed between the person to be bound and a party to the judgment; (3) the nonparty was adequately represented by someone who was a party to the suit; (4) the nonparty assumed control over the litigation in which the judgment was issued; (5) a party attempted to relitigate issues through a proxy; or (6) a statutory scheme foreclosed successive litigation by nonlitigants." *Griswold v. Cnty. of Hillsborough*, 598 F.3d 1289, 1292 (11th Cir. 2010) (citing *Taylor v. Sturgell*, 128 S.Ct. 2161, 2172-73) (2008)).

Rodemaker alleged the individual Defendants were acting as agents of the School Board when they voted not to offer him a coaching contract (Complaint, Doc. 21-1 at 33 ¶ 75), and the district court found that the individual Defendants and the Board were in privity on the basis of that relationship (Doc. 21-3 at 35-38), among other grounds. The Court reviews that finding for clear error. A factual finding is clearly erroneous only if, after the Court reviews the evidence, it is left with "the definite and firm conviction that a mistake has been committed." *United States v. Villarreal*, 613 F.3d 1344, 1349 (11th Cir. 2010) (internal citation and quotation marks omitted).

The Eleventh Circuit has long recognized that a principal-agent relationship establishes privity when the claims against the principal arise solely from the acts of

12

its agent. In *Citibank, N.A. v. Data Lease Fin. Corp.*, Data Lease had previously settled third-party claims against seven directors of Miami National Bank, all of whom had been appointed by Citibank. In that settlement, the parties had expressly reserved the right to sue Citibank for the actions of the directors. Nonetheless, this Court held that the claims against Citibank were barred by claim preclusion. In so holding, the Court noted that "[w]hen a person suffers injury as the result of the concurrent or consecutive acts of two or more persons, he has a claim against each of them. . . . However, since Data Lease, in its counterclaim, is seeking damages against Citibank only under the theory of respondeat superior or vicarious liability,[] Data Lease does not claim any injury from 'concurrent or consecutive acts' of Citibank; rather, Data Lease seeks damages from Citibank solely on the basis of the alleged wrongful acts of its agents." *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1502 (11th Cir. 1990) (quoting the Restatement (Second) of Judgments § 49 cmt. a (1980)).

In concluding there was privity, the Court quoted favorably the Fifth Circuit's observation that "[m]ost other federal circuits have concluded that employer-employee or principal-agent relationships may ground a claim preclusion defense, regardless which party to the relationship was first sued." *Id*. Later, a panel of this Court concisely described how *Citibank* fits with the Supreme Court's recent guidance in *Sturgell*: "A principal-agent relationship is one kind of 'substantive legal

13

relationship' that establishes privity for claim preclusion purposes." *Echeverria v. Bank of Am., N.A.*, 632 F. App'x 1006, 1008 (11th Cir. 2015) (citing *Sturgell*, *Citibank*, and *Griswold v. Cnty. of Hillsborough*, 598 F.3d 1289, 1292 (11th Cir. 2010)).

The district court correctly found there was privity based on a principal-agent relationship in this case because Rodemaker "asserts no allegations specific to any actions taken by the School Board. Instead, the premise of both lawsuits is that the individual Defendants, as agents of the School Board, acted on behalf of the Board." Doc. 21-3 at 38. In his complaint, Rodemaker specifically alleged that the individual Defendants "constitute a majority membership of the School Board" and that "each of the Individual Defendants acted as agents of Defendant School Board." Complaint, Doc. 21-1 at 32-33, ¶¶ 65, 75. Here, as in *Citibank*, Rodemaker does not allege he was injured by any "concurrent or consecutive acts" of the School Board, but rather "solely on the basis of the alleged wrongful acts of its agents." *Citibank*, 904 F.2d at 1502.[6] The only wrongful act which Rodemaker alleges against the

---

[6] In other cases, courts have used the term "vicarious liability" to express what circumstances are close enough to establish privity. *See, e.g.*, *Davis v. Davis*, 551 F. App'x 991 (11th Cir. 2014), *infra*. That term is subject to differing definitions, and the Court's statement from *Citibank*— that a principal sued "solely on the basis of the alleged wrongful acts of its agents" is in privity with those agents—is more precise than "vicarious liability." The School Board will discuss the relation between principal-agent privity, "vicarious liability", and municipal liability in more detail below. *See* note 13, *infra*.

School Board is that five of its members voted not to offer him the coaching contract. Further, the five individual boardmembers' actions harmed Rodemaker only inasmuch as their decision constituted the Board's decision. Not only were the individual Defendants clearly acting as agents of the Board, but also they *were* the Board for purposes of the vote on Rodemaker's coaching contract.[7] As such, privity clearly exists on the established ground of a principal-agent relationship.[8]

---

[7] As the district court wrote, "[h]ere, the potential liability for the acts of the Board members in their individual capacities cannot be unraveled from the liability of the School Board as the decision of the Board members 'unquestionably constitutes an act,' or decision, of the Board itself." Doc. 21-3 at 85 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).

[8] Before the district court, the School Board also argued that its counsel controlled the prior litigation. Rodemaker takes issue with the district court's conclusion that Rodemaker "d[id] not dispute [the School District's] assertion that the School Board provided counsel for the [Individual Board Members] in the previous action and exerted substantial control over the defense." Doc. 19 at 55. The district court was correct that Rodemaker did not dispute that. Counsel for the School Board asserted they controlled the litigation in *Rodemaker I*, both in their reply brief and during the motion hearing, and Rodemaker did not dispute that at the hearing or in his supplemental brief filed after the hearing. As such, Rodemaker had ample opportunity to object to the Court's consideration of the control issue, but he waited until his motion for reconsideration to make that argument. Instead, his only argument against privity at the motions hearing was that government officials in their individual capacity can *never* be in privity with the School Board. Motions Hearing Tr., Dist. Ct. Doc. 48 at 51:20-52:24. In his supplemental brief, submitted after the hearing, Rodemaker tried to distinguish *Citibank* and *Jang*, but he never addressed the control basis for privity until his motion for reconsideration. "[D]istrict courts act well within their discretion when they refuse to consider arguments that a party made for the first time in a motion for reconsideration." *Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1235 (11th Cir. 2020). That is what the district court did here.

In sum, Rodemaker passed up both of his opportunities to address the School Board's control argument, waited for the district court to rule on that control

## III. Rodemaker's proposed rule that governmental entities can never be in privity with their officers or employees is not supported by authority

Rodemaker does not contest that a principal-agent relationship with respect to the allegations of a lawsuit establishes privity, nor does he dispute that doctrine's application to the facts of this case. Instead, he urges the Court to recognize an independent, absolute rule that says a governmental entity *can never* be in privity with its officers or employees[9] for purposes of claim preclusion. He argues that rule trumps all the authority for the privity principles cited above. Notably, the only fault Rodemaker finds in the district court's privity analysis is its refusal to apply that sweeping rule. Doc. 19 at 42-45. Rodemaker cites no controlling precedent to support that theory.

Further, claim preclusion "protect[s] against the expense and vexation attending multiple lawsuits, conserve[s] judicial resources, and foster[s] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Taylor v.*

---

argument (among other grounds), then set out his own position on that issue for the first time in a motion for reconsideration (where it is procedurally barred) and now on appeal (where it is also procedurally barred). Under those circumstances, Rodemaker cannot show the district court committed clear error by accepting the School Board's unopposed assertion that it controlled the prior litigation.

[9] No one disputes that individuals in their official capacities are in privity with their employer—in fact, an official-capacity suit "is simply another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Rodemaker argues the officer or employee in his individual capacity—meaning, the officer or employee himself—can never be in privity with the governmental entity.

*Sturgell*, 553 U.S. 880, 892 (2008) (internal quotation marks, citation, and alteration marks omitted). Rodemaker's selective erasure of claim preclusion for governments would disserve those interests. For example, it would allow (1) a discharged school district employee to sue individuals under § 1981, lose at trial, then file a new suit under Title VII; (2) a discharged employee of the Navy alleging discrimination to litigate his claims against the Navy, lose, then sue Naval officers under the FTCA and due process clause[10]; (3) a plaintiff to sue a city for an unlawful search, lose, then sue the prosecutor who authorized it[11]; or (4) an inmate to sue individual prison officers under § 1983 and the First Amendment, lose, then sue under RLUIPA for injunctive relief. In those scenarios, governmental actors and courts would have to litigate those claims twice; while the plaintiff, who could have brought all her claims together in one suit but chose not to, would get the benefit of two bites at the apple. That is not the law, nor should it be. This Court should reject Rodemaker's invitation to categorically deny governments the protection of claim preclusion.

### A. The *Monell* line of cases cited by Rodemaker supports, rather than undermines, the district court's finding of privity

Rodemaker cites *Monell v. Dep't of Social Services* for the principle that "a government entity cannot be responsible for the torts of its officials under a theory

---

[10] *See Lamb v. Modly*, 2021 WL 1198158, at *4-*8 (D. Md. Mar. 30, 2021).

[11] A hypothetical based on the facts in *Pembaur v. City of Cincinnati*, 475 U.S. 469, 474 (1986).

of *respondeat superior*." Appellant's brief at 25-26 (citing 436 U.S. 658 (1978)).

Rodemaker is generally correct: in many, perhaps most, *Monell* cases, there is a difference between an individual's act and the governmental entity's policy, and plaintiff can only recover against the municipality for municipal policy—*i.e.*, for the municipality's own actions. As such, Rodemaker is correct that the conduct giving rise to liability for governmental entities is often different from the conduct giving rise to liability for governmental officers. Put differently, in many *Monell* cases, a municipality's liability does not rest "solely on the basis of the alleged wrongful acts of its agents," *Citibank,* 904 F.2d at 1502, but rather on a separate municipal policy. That cuts against privity in many cases involving *Monell* liability.[12]

In other cases, however—including this one—the basis of liability is the same. When the individuals' actions themselves constitute official policy, then the municipality's conduct and the individuals' conduct are the same. "No one has ever doubted . . . that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body—whether or not that body had taken similar action in the past or intended to do so in the future—because even a single decision

---

[12] In addition to its holding that, in most cases, individual actions are not attributable to the municipality, which makes principal-agent privity inapplicable, the *Monell* doctrine often create adverse incentives among the defendants. For example, in an Eighth Amendment conditions of confinement or excessive force case at a county jail, an individual may argue he was following official policy or training, while the municipality may argue the opposite. As such, the individual defendants and the entity may have adverse interests, defeating privity.

by such a body unquestionably constitutes an act of official government policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) (citations omitted) (finding that decision by a government's authorized policymakers is municipal policy); *see also Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1325 (11th Cir. 2003). And as the Supreme Court noted in *Monell* itself, the action of a Board of Education "unquestionably involves official policy." 436 U.S. at 694.[13]

Similarly, the individuals' actions here—a majority vote not to offer Rodemaker a coaching contract—were unquestionably the act of the School Board. The allegations against the School Board concern the Board's own actions, and the allegations in *Rodemaker I*—that a five-member majority decided not to offer Rodemaker a coaching contract because of his race—also concerned the Board's actions.

Again, Rodemaker specifically alleged in his complaint that the individuals voted as agents of the School Board. Doc. 21-1 at 32-33 ¶¶ 65-67, 75. Further, the

---

[13] Compared to "vicarious liability", which Rodemaker does not seem to dispute is a valid ground for privity, a nonpolicymaking individual and a governmental entity sued partly on the basis of that individual's actions is a more attenuated legal relationship because the individual's actions are not attributable to the entity. However, a policymaking individual and an entity sued for that individual's policymaking actions are in an even closer relationship than vicarious liability because the individual's act is not merely attributable to the entity; rather, it is the entity's own act. It would be strange to find privity between an entity and individuals for whom the entity was vicariously liable but not find privity between an entity and the individuals whose actions are the entity's own actions.

Georgia Constitution provides that "[e]ach school system shall be under the management and control of a board of education." GA. CONST. art. VIII, § 5, ¶ II. In this case, as in *Pembaur*, there is no issue of whether the individuals' acts should or should not be attributed to the School Board. Viewed as a whole, the *Monell* line of cases—including *Monell* itself—affirm that the acts of the individual Defendants were official policy. Consequently, as the district court correctly ruled, the individuals' actions and the School Board's actions were the same.

As such, while governmental officials and the entities they serve are not *always* in privity, nothing in the *Monell* decision supports Rodemaker's proposed rule that they are *never* in privity. To the contrary, both *Monell* itself and *Pembaur* affirmed that when the alleged individual wrongdoers had final decisionmaking authority for the entity, the claims against the entity rest only on the acts of its individual agents.

Under the normal privity tests, when a plaintiff sues a governmental entity based solely on the acts of policymaking individuals, then the plaintiff is seeking to hold the entity liable "solely on the basis of the alleged wrongful acts of its agents." *Citibank,* 904 F.2d at 1502. In those circumstances, the principal-agent basis of privity is satisfied. On the other hand, for claims against governmental entities based on the actions of non-policymaking individuals, the plaintiff seeks to hold the entity liable for its own law, custom, or policy, not the individuals' conduct. As such, there

is typically no principal-agent privity in those cases. This case, however, fits squarely into the principal-agent basis for privity.

## B. The persuasive authority weighs against Rodemaker's sweeping privity rule

There are no Supreme Court cases or published cases in this Circuit that expressly affirm or reject Rodemaker's argument. Accordingly, the parties look to persuasive authority, such as unpublished decisions and decisions of sister circuits. At least two unpublished cases from this Circuit undermine Rodemaker's proposed rule.

In its most recent unpublished case that bears on this issue, this Circuit, applying Georgia law, rejected Rodemaker's sweeping privity rule. In *Sheba Ethiopian Rest., Inc. v. Dekalb Cty.*—the first case Rodemaker cites in the privity section of his brief—the Court acknowledged that "it is not necessarily true that government officials are in privity with their agency when they are sued in their individual capacities." 820 F. App'x 889, 897 (11th Cir. 2020) (citation omitted). However, the Court held that because plaintiff had alleged the existence of a conspiracy, that established privity. *Id.* at 898 ("Given Sheba's conspiracy allegations, the government officials sued in their individual capacities, too, are in privity with the County.").[14] In other words, this Court ruled that where there is a

---

[14] Although the School Board did not argue before the district court that Rodemaker's conspiracy allegations create privity in this case, Rodemaker did not

substantive legal relationship that establishes privity, there is privity—regardless of whether the party invoking privity is a private actor or a governmental officer or employee.

Similarly, in *Davis v. Davis*, a pro se plaintiff sued a sheriff, alleging vicarious liability for the acts of his deputies, lost, then sued the deputies individually. 551 F. App'x 991 (11th Cir. 2014). The Court acknowledged that vicarious liability could create a substantive legal relationship for purposes of claim preclusion but held that there was no vicarious liability for the sheriff under *Monell*, so there was no privity. *Id.* at 997. The Court, therefore, applied the rule that when the actions of one defendant are legally attributable to another, there is privity, and where they are not, there is no privity.

The dicta from other circuits provides guidance but is not entirely consistent. Some decisions assert there is *always* privity between a governmental entity and its individual agents—*see, e.g., Schuster v. Martin*, 861 F.2d 1369, 1373 (5th Cir. 1988); *Mandarino v. Pollard*, 718 F.2d 845, 850 (7th Cir. 1983)—while others seem

_____

dispute the district court's holding that the individuals' alleged conspiracy is attributable to the School Board for purposes of the intracorporate conspiracy doctrine. Given that the alleged "conspiracy" was an agreement by a five-member majority—and therefore by the School Board itself—it is hard to see how the Board would not be a party to the alleged conspiracy. As such, the conspiracy allegations provide an additional basis upon which this Court could affirm the district court's ruling. *See Wright v. City of St. Petersburg*, 833 F.3d 1291, 1294 (11th Cir. 2016) (quotation marks omitted) (the Court may "affirm for any reason supported by the record.").

to say there is *never* privity—*see, e.g.*, *Goldstein v. Galvin*, 719 F.3d 16, 23 (1st Cir. 2013); *Andrews v. Daw*, 201 F.3d 521 (4th Cir. 2000). The truth lies in the middle: government entities and their agents can be in privity on the same bases as private entities and their agents. *See Sheba Ethiopian Rest., Inc. v. DeKalb Cnty., Georgia*, 820 F. App'x 889, 898 (11th Cir. 2020) (finding privity on the basis of an alleged conspiracy); *see also E.E.O.C. v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1285-86 (11th Cir. 2004) (describing privity as "a flexible legal term" and "a question of fact").

In circumstances like these—when claims against a governmental entity arise solely from the actions of individual officers with policymaking authority—the weight of persuasive authority holds that the governmental entity is in privity with the officers in their individual capacities.

For example, in *Cycle Chem, Inc. v. Jackson*, 465 F. App'x 104 (3d Cir. 2012), Cycle Chem appealed an adverse decision of the New Jersey Department of Environmental Protection (DEP) to state court, lost, then sued the DEP Commissioner for damages under § 1983. The court held that the Commissioner was the DEP's privy and that claim preclusion barred the § 1983 claims.

Similarly, in *Schuster v. Martin*, the Court held that a prior judgment in favor of a public hospital barred subsequent litigation under Section 1983 against the hospital's boardmembers in their individual capacities. 861 F.2d 1369 (5th Cir.

1988). The Court noted that "[i]t is also a general principle of the law of preclusion that state officials are, as a matter of law, in privity with the agency or department in which they serve.[15] The policy underlying this principle is to prevent local officials from being subjected to constant litigation in a manner that would deter able citizens from undertaking public service. This policy is fostered especially in situations where, as here, the public service being performed is wholly voluntary." *Id*. at 1373 (footnote added); *see also Dean v. Mississippi Bd. of Bar Admissions*, 394 F. App'x 172 (5th Cir. 2010) (prior state-court judgment in favor of Board of Bar Admissions barred later § 1983 claims against individual boardmembers).

Similarly, in *Moore, Successor Tr. of Clarence M. Moore & Laura P. Moore Tr. v. Hiram Twp., Ohio*, 988 F.3d 353, 355 (6th Cir. 2021), the Board of Zoning Appeals (BZA) of a municipality issued an adverse ruling on plaintiff's application for a certificate of nonconforming use. Plaintiff appealed to state court, naming the

---

[15] To be clear, the School Board is not arguing the position that governmental officials in their individual capacities are always in privity with the governmental entity they serve. Courts have been consistent on their holdings that there is privity when the facts warrant (such as when boardmembers make a decision for a governmental entity). However, courts' descriptions of their holdings in this context have often gone farther than the holdings themselves: for instance, the *Schuster v. Martin* panel suggested there is *always* privity between a governmental entity and its officers in their individual capacity; in other cases where there is a finding of no privity, other courts have suggested there is *never* privity. Both rules go too far and transform privity from a case-by-case factual determination into an all-or-nothing rule based on whether the parties are governmental entities or not. That does not square with the Court's traditionally fact-specific, case-by-case approach to privity analysis.

24

municipality as the sole defendant, and lost. He then sued the township and the BZA members in their individual and official capacities in federal court. Applying Ohio law, the Sixth Circuit held the claims were barred by res judicata and that the individuals in their individual capacities were in privity with the Township. In its decision, the court relied on the fact that the allegations of both complaints were "based upon the same conduct, and all of the alleged wrongdoing stemmed from conduct by the defendants in their official roles that *could only have been taken* in the exercise of their official duties[.]" *Id.* at 360 internal quotation marks omitted) (citing *Kirkhart v. Keiper*, 805 N.E.2d 1089, 1093 (Oh. 2004))

In *Mandarino v. Pollard*, 718 F.2d 845, 850 (7th Cir. 1983), a former police chief for the Village of Lombard brought suit in state court against the Village for wrongful termination and alleged violations of the Illinois constitution. He lost. In a subsequent suit, he brought federal constitutional claims against the village mayor, the village manager, and several trustees of the village board in their individual and official capacities. The Court held that "[a] government and its officers are in privity for purposes of res judicata" and affirmed the district court's dismissal of the complaint on the ground of res judicata. *Id.* at 850 (7th Cir. 1983).[16]

---

[16] In the *Mandarino* decision, the court appeared to state that a government and its officers are *always* in privity for purposes of res judicata; in a later case, *Conner v. Reinhard*, 847 F.2d 384 (7th Cir. 1988), it suggested that governmental entities and their individual officers or employees are generally not in privity. The cases materially differed on their facts: in *Conner I*, the court granted a directed verdict in

Similarly, in *Licari v. City of Chicago*, 298 F.3d 664, 665 (7th Cir. 2002), the Retirement Board for Chicago police denied an officer's claim for disability. The officer appealed to state court, lost, and then sued the boardmembers of the Retirement Board in their individual and official capacities under the Fourteenth Amendment and § 1983. Applying Illinois law, the court held the claims were barred by the prior judgment and noted that "a finding of privity is especially warranted where, as here, Licari does not allege any action taken against him by the defendants (in either their official or individual capacities) that is separate and distinct from any action taken by the Board." *Licari*, 298 F.3d at 667.

In *Ruple v. City of Vermillion, S.D.*, 714 F.2d 860 (8th Cir. 1983), plaintiff sued the city for wrongful termination in state court, lost, then brought procedural due process claims under § 1983 against four city counselors who voted to dismiss plaintiff. The court held that the counselors were in privity with the city with respect to their vote to terminate plaintiff and observed that "[a]ny other rule would enable plaintiff to avoid the doctrine of res judicata by the simple expedient of not naming all possible defendants in her first action." *Id*. at 862.

_____

favor of the municipality because plaintiff failed to produce evidence that Reinhard's decision to terminate her was municipal policy. 847 F.2d at 394. Accordingly, in *Conner*, unlike in *Mandarino* and the present case, it was already established that the adverse employment action was not municipal policy, and the bases of liability for the individuals and the entity were different. As such, there was no privity even under the normal test.

In *Gonzales v. Hernandez*, 175 F.3d 1202, 1203 (10th Cir. 1999), an employee of the Las Vegas Medical Center (LCMV) sued LCMV in state administrative proceedings, appealed to state court and lost, then sued LCMV employees under § 1981 and § 1983 in federal court. The court ruled that because "the underlying transactions and alleged wrongful conduct in [plaintiff's] two claims [were] identical," there was privity. *Gonzales v. Hernandez*, 175 F.3d 1202, 1206 (10th Cir. 1999).

In *McIntyre v. Fulwood*, 892 F. Supp. 2d 209, 215 (D.D.C. 2012), an inmate filed a petition for habeas corpus under 28 U.S.C. § 2241, alleging the United States Parole Commission had departed from regulations when it denied parole. In a subsequent action, he sued the Chair of the Parole Commission and others in their personal capacities under § 1983 and the Privacy Act, 5 U.S.C. § 552a, claiming he was denied a fair and impartial parole hearing. The Court found those claims could have been raised in the § 2241 proceeding against the Warden and ruled they were barred by claim preclusion.

Those cases demonstrate that where the alleged basis of liability for an individual with policymaking authority and the municipality is the same, courts find there is privity.

27

### C. The cases Rodemaker cites do not support his argument that a governmental entity can never be in privity with its officers or employees

Rodemaker primarily relies on three cases for his argument that governmental officers in their individual capacities can never be in privity with the entities they serve.

In *Johnson v. Alabama Dep't of Hum. Res.*, this Court stated, without holding, that a prior judgment in favor of the entity did not bar individual-capacity claims. 546 F. App'x 863, 868 (11th Cir. 2013) (affirming summary judgment). However, the parties in that case never briefed that issue, the Court did not provide any reasoning for its ruling, and the Court affirmed summary judgment on those claims on different grounds.[17] Unpublished decisions are "persuasive only to the extent that a subsequent panel finds the rationale expressed in that opinion to be persuasive after an independent consideration of the legal issue." *Collado v. J. & G. Transp., Inc.*,

---

[17] The procedural history in that case was unusual. The plaintiff had filed an earlier pro se suit ("*Johnson I*") alleging pregnancy discrimination that was dismissed for failure to timely recast. The plaintiff then filed a second suit ("*Johnson II*) alleging pregnancy discrimination in violation of the Equal Protection Clause. The district court granted summary judgment, holding that pregnancy discrimination, without more, does not violate the Equal Protection Clause. *Johnson v. State of Alabama Dep't of Hum. Res.*, 2012 WL 12892180, at *3 (N.D. Ala. Mar. 20, 2012) (citing *Geduldig v. Aiello*, 417 U.S. 484 (1974)). On appeal, the first panel eschewed *Geduldig* and *sua sponte* affirmed on res judicata grounds instead. Johnson filed an unopposed motion for rehearing, which the panel granted, vacating its prior decision. The second panel entered the final decision, finding there was insufficient evidence to survive summary judgment.

820 F.3d 1256, 1259 n.3 (11th Cir. 2016). The Court in *Johnson* did not provide a rationale for its conclusion on the privity issue, and the School Board respectfully suggests that decision's persuasive value on the issue of privity is limited.[18]

In *Headley v. Bacon*, 828 F.2d 1272 (8th Cir. 1987), a former municipal police sued the city for sex discrimination and won. She then sued three individuals for sex discrimination under 42 U.S.C. §§ 1982, 1983, and 1985. The Eighth Circuit stated its holding—and its test for privity—up front: "Because we conclude that the interests of the defendant police force officials in the present action *were not adequately congruent to those of their employer*, the defendant city in the previous action, we agree with the plaintiff that privity is lacking." *Headley v. Bacon*, 828 F.2d 1272, 1274 (8th Cir. 1987) (emphasis added). The panel reasoned that the parties' interests differed because the city was only liable if the individuals' actions were within the scope of their official duties, and the individuals were only liable if their actions were outside the scope of their official duties. *Id.* at 1277. Far from

---

[18] Though he does not discuss its facts, Rodemaker cites another unpublished case, *Konikov v. Orange Cty.*, where the Court found there was no privity. 276 F. App'x 916, 918-19 (11th Cir. 2008). In that case, a plaintiff who had received citations for zoning noncompliance had obtained judgment in a prior action against the County to invalidate part of the zoning ordinance. He then sued five individuals (two were code enforcement officers; the titles of the other three are not clear) who he alleged had conspired amongst themselves to give false testimony against him at a zoning hearing. Nothing in the case suggests those individuals had policymaking authority, and the bases of liability for the County and the individuals—the allegedly unconstitutional ordinance and the false testimony, respectively—were different. The employees' alleged false testimony was individual action, not municipal policy.

supporting Rodemaker's proposed rule that government officials in their individual capacity can *never* be in privity with the governmental entity they serve, *Headley* applied a commonality-of-interest test. In other words, the court suggested that privity relationships between a governmental entity and its employees should be determined by normal principles of privity law—exactly the School District's position here.

In *Andrews v. Daw*, 201 F.3d 521, 523 (4th Cir. 2000), a pro se plaintiff sued a North Carolina state trooper in his official capacity—in reality against the state— for excessive force, lost on sovereign immunity grounds, then sued him in his individual capacity. In finding there was no privity, the court relied on two principles. First, it interpreted the "rule of differing capacities" to mean that "in appearing as a representative of another, a person should be free to take positions inconsistent with those he might assert in litigation on his own behalf or on behalf of others he represents in some other fiduciary capacity." 201 F.3d at 525 (quoting Restatement (Second) of Judgments § 36(2)). Second, it noted that different remedies and different theories of liability were required for the two claims and that different defenses were available. *Id*. at 526 (citing *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985)).

In *Andrews*, unlike this case, the bases of liability for the state and for the individual were different. To obtain injunctive relief against a state officer in his

official capacity—i.e., against the state—a plaintiff "must allege that the defendant *is violating* federal law, not simply that the defendant has done so." *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015) (citing *Green v. Mansour,* 474 U.S. 64, 71-73 (1985)). That was not the allegation in *Andrews*, which was about an alleged unreasonable use of force during a one-time encounter. Further, as in *Davis v. Davis*[19], the police officer's one-time act was not attributable to the state. That is different from this case and the cases above, where the acts of the individual and the acts of the entity were the same.[20] For those reasons, the successive defendants in the *Daw* cases were not in privity even under the normal test. As such, the court never even addressed principal-agent privity, nor does its reasoning support Rodemaker's position that principal-agent privity can never exist when the principal is a governmental entity.

---

[19] 551 F. App'x 991 (11th Cir. 2014), discussed *supra* at 22.

[20] The court's policy rationale—that a party litigating in a representative capacity "should be free to take positions inconsistent with those he might assert in litigation on his own behalf or on behalf of others he represents in some other fiduciary capacity"—is inapplicable to privity between an individual with policymaking authority and the entity that individual serves. In that situation, the parties' interests are aligned, the basis for liability is the same, and there is no need for the individual to take inconsistent positions. Further, in the context of § 1983 litigation, an official-capacity defendant will not be directing the litigation on behalf of the governmental entity, because an official-capacity suit is simply "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

### D. The Restatement (Second) of Judgments supports a finding of privity here

Additionally, to the extent that *Daw*'s language might be interpreted to suggest an absolute bar to privity between a governmental entity and its agents, that interpretation strays from the Restatement (Second) of Judgments that the court relied on. Section 36 of the Restatement governs privity between an individual in his personal capacity and the same individual in a variety of representative capacities—an administrator of an estate, a trustee, a guardian, or a class-action representative, for example. Restatement § 36(2) cmt. b. Nothing in that section categorically states there cannot ever be privity between such parties, only that there is not *automatic* privity between them.

The Restatement notes only that "(2) A party appearing in an action in one capacity, individual or representative, is not *thereby* bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity." Restatement § 36(2) (1982) (emphasis added). In other words, a party appearing in one capacity is not *automatically* in privity with the same party appearing in a different capacity. Comment c to that section makes that clear: "The rule of this Section deals with the effects of difference in capacity as such. *Rules in addition to those that differentiate a person's multiple capacities may result in the judgment's having effects with respect to a person who appears in litigation in different capacities.*" Restatement (Second) of Judgments § 36 cmt. c (1982)

(emphasis added). The Restatement then provides examples of situations where a party litigating in a representative capacity may, nonetheless, be bound in a personal capacity. Far from supporting Rodemaker's rule, the Restatement instead confirms that, when circumstances would ordinarily justify privity, an individual appearing in a representative capacity will be in privity with the same individual in a personal capacity.[21]

---

[21] *Daw* is not the only decision to overstate the Restatement's rule of differing capacities or to miss the principle articulated in Comment c—that other grounds establishing privity relationships can apply to parties appearing in differing capacities, too. In *Mitchell v. Chapman*, 343 F.3d 811, 823 (6th Cir. 2003), Mitchell sued the US Postal Service and Postmaster General, alleging failure to accommodate under the ADA and Rehabilitation Act and FMLA retaliation. The court entered judgment against him for failure to contact the EEOC within 45 days of the allegedly discriminatory conduct. Mitchell then sued his former supervisor, former facility postmaster, and a USPS nurse for a variety of claims. The court cited § 36(2) of the Restatement to state there was no privity "because of the rule of differing capacities." *Id*. 825. Although it did not matter—the court ended by affirming summary judgment for defendants on the merits—the court neglected to consider (or perhaps the defendants neglected to argue) whether there were any substantive legal relationships that would have warranted a finding of privity.

Similarly, in *Goldstein v. Galvin*, 719 F.3d 16, 23 (1st Cir. 2013), the First Circuit, applying state law and citing the Restatement (among other authority), stated that "a person sued in his official capacity is a different party, in contemplation of law, than the same person sued in his individual capacity. It follows inexorably that a person sued only in his official capacity is neither identical to, nor in privity with, the same person sued in his individual capacity." That holding rests on a clear *non sequitur*: the fact two defendants are different parties does not "inexorably" defeat privity. Rather, the question of privity does not even arise unless two parties are different. The Restatement's rule of differing capacities is the beginning, not the end, of privity analysis.

### E. Rodemaker's rule would undermine the interests advanced by claim preclusion, uniquely disfavor public bodies, and create perverse incentives

Not only does the authority weigh against Rodemaker's sweeping privity rule, but sound policy does, too. "Res judicata ensures the finality of decisions. Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. Res judicata thus encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Brown v. Felsen*, 442 U.S. 127 (1979) (citations and quotation marks omitted). Rodemaker's rule creates a carveout from claim preclusion and, as such, would forfeit in many § 1983 cases the valuable interests that courts established claim preclusion to protect.

For example, under Rodemaker's rule, an employee terminated by a governmental board could litigate § 1981 claims against the individuals, lose at trial[22], then bring a new suit under Title VII. That is a classic case of having two bites at the apple.

---

[22] Here, Rodemaker lost the first case on a motion to dismiss. However, it is undisputed that an order granting a motion to dismiss, like a jury verdict finding no liability, is a "final judgment on the merits" for purposes of claim preclusion. As such, under Rodemaker's view of the law, he could maintain this second suit whether he lost the first case on a motion to dismiss or on a jury verdict.

Other examples show further potential for abuse: a habeas claim followed by a § 1983 claim against individuals who denied parole (*see McIntyre*, 892 F. Supp. 2d at 215), a First Amendment claim followed by a subsequent RLUIPA suit, or a Fourth Amendment claim against a city whose prosecutor authorized a search and then a subsequent suit against the officer himself. In all those cases, the acts of the individuals constitute official acts, so the municipal defendants are being sued solely based on the acts of their agents. Longstanding claim preclusion doctrine recognizes that when defendants have such close principal-agent relationships—and when liability is based on the exact same acts—privity should apply. Rodemaker does not and cannot identify any benefits that would come from throwing that doctrine out for governmental entities.

Further, Rodemaker's rule would create perverse incentives. A plaintiff who can win by prevailing either in his § 1981 case or his later Title VII case might, naturally, decide that two shots are better than one, to the detriment of both defendants and courts. Plaintiffs could potentially obtain relief by convincing just one out of two juries of their claims: they could win 100% by winning 50%. A governmental defendant facing cost of defense for two lawsuits—and in some cases, a steeper burden of having to go two-for-two with different juries—may be willing to settle employment claims for more money than a private entity protected by claim preclusion, potentially making it more attractive to sue governmental entities than

35

private actors. A governmental defendant might also decide to lean more on private contracting: Georgia Department of Corrections, for example, can likely benefit from a judgment in favor of private prison contractor, *see, e.g.*, *Barker v. Geo Grp., Inc.*, 2012 WL 3264545, at *1 (M.D. Fla. Aug. 10, 2012), but under Rodemaker's rule, the same judgment in favor of a prison guard would leave GDC defenseless in a second suit.

Finally, though Rodemaker's rule would sacrifice the interests protected by claim preclusion, it has no benefit whatsoever. All it does is uniquely—and arbitrarily—disadvantage governmental entities. Where other employers could litigate a case to a favorable judgment and have that be the end of the matter, governmental entities could avoid liability only by obtaining two favorable judgments. And the party by whose conduct alone that waste can be avoided— plaintiff—would be the sole beneficiary of double litigation. For those reasons, the Court should reject Rodemaker's invitation to create a sweeping new privity rule.

Because it is undisputed that the five individuals were agents of the School Board and that Rodemaker seeks to hold the School Board liable solely for the acts of its agents, the Court should affirm the district court's ruling that the boardmembers and the School Board are in privity for purposes of res judicata.

## CONCLUSION

Rodemaker could have brought his failure to hire claims together in one action. Instead, he elected to split his claims across two different federal lawsuits. That decision has unnecessarily burdened the School Board with the cost and vexation of multiple lawsuits and has wasted judicial resources. The doctrine of claim preclusion protects courts and defendants from those costs by requiring plaintiffs, who ultimately control when and how they bring their claims, to bring them all in one action. The doctrine of claim preclusion also provides consequences—dismissal of successive lawsuits—when plaintiffs fail to do so.

Rodemaker does not dispute that the district court had jurisdiction and entered a final judgment on the merits in *Rodemaker I*. Nor does he dispute the district court's conclusion that his successive lawsuits arise from the same nucleus of operative fact. Instead, he ignores the "common nucleus of operative fact" test altogether and simply argues he was not able to join the School Board in the first action. Not only does that argument whiff the established standard for the "same cause of action" prong of claim preclusion, but also it fails as a matter of procedure. Rodemaker clearly could have brought his claims against the School Board in *Rodemaker I*.

On privity, Rodemaker does not dispute that the individual Defendants were acting as agents of the Board when they voted not to offer him a coaching contract.

Instead, he seeks to avoid the consequences of his multiplicity of lawsuits by asking this Court to create an absolute carveout from claim preclusion for plaintiffs who sue governmental entities, allowing him to sue individuals in one suit and the entity in a second one. Rodemaker offers no policy justifications for this rule, nor can he.

It is true that privity analysis is often more complicated for governmental entities, largely because claims against municipalities under § 1983 require a showing of municipal custom or policy, which means the conduct that forms the basis for liability against individuals is not necessarily the same conduct that forms the basis for liability for the entity itself. As such, under normal privity analysis, the individuals and the entity will often not be in privity. However, the Supreme Court has made clear that when individuals have final policymaking authority, their actions and decisions taken pursuant to that authority necessarily constitute governmental policy. Accordingly, the bases for liability are the same.

In cases like this, therefore, the privity analysis becomes straightforward: because Rodemaker seeks to hold the School Board liable based solely on the wrongful acts of its boardmember agents, rather than any concurrent or consecutive acts of the School Board itself, the boardmembers and the School Board are in privity for purposes of claim preclusion. Rodemaker cites no authority or policy reasons to strip the School Board of the protection of claim preclusion solely on account of its governmental status.

For those reasons, Defendant-Appellee City of Valdosta Board of Education respectfully requests that this Court affirm the judgment of the district court.

Respectfully submitted, this 20th day of March, 2023.


/s/ W. Kerry Howell
W. Kerry Howell
W. KERRY HOWELL, LLC
230 Third Street
Macon, GA 31201
(478) 745-0020
*Counsel for Defendants-Appellees*
*City of Valdosta Board of*
*Education, Warren Lee, and*
*Kelisa Brown*

/s/ Thomas W. Joyce
Thomas W. Joyce
William B. McDavid, Jr.
Brandon A. Oren
JONES CORK, LLP
435 Second Street, Suite 500
Macon, GA 31201
(478) 745-2821
*Counsel for Defendants-Appellees*
*City of Valdosta Board of*
*Education, Liz Shumphard, Tyra*
*Howard, and Debra Bell*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limit of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 12,862 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4.

I further certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman type.


*/s/ W. Kerry Howell*
W. Kerry Howell
W. KERRY HOWELL, LLC
230 Third Street
Macon, GA 31201
(478) 745-0020
*Counsel for Defendants-Appellees*
*City of Valdosta Board of*
*Education, Warren Lee, and*
*Kelisa Brown*

*/s/ Thomas W. Joyce*
Thomas W. Joyce
William B. McDavid, Jr.
Brandon A. Oren
JONES CORK, LLP
435 Second Street, Suite 500
Macon, GA 31201
(478) 745-2821
*Counsel for Defendants-Appellees*
*City of Valdosta Board of*
*Education, Liz Shumphard, Tyra*
*Howard, and Debra Bell*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I filed the foregoing brief electronically using the Court's CM/ECF system, which will serve all counsel of record.

This 20th day of March, 2023.

> */s/ Thomas W. Joyce*
> Thomas W. Joyce
> William B. McDavid, Jr.
> Brandon A. Oren
> JONES CORK, LLP
> 435 Second Street, Suite 500
> Macon, GA 31201
> (478) 745-2821
> *Counsel for Defendants-Appellees*
> *City of Valdosta Board of*
> *Education, Liz Shumphard, Tyra*
> *Howard, and Debra Bell*

41